WHITE v. DEVENDORF.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST DECEDENTS—CONTRACTS —PROOF—SUFFICIENCY.

The courts, before upholding an oral agreement alleged to have been made with a decedent prior to his death, which, if carried out, will divert his property from its natural channels, will require it to be established by clear and convincing proof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 903, 903½.]

2. SAME.

Evidence *held* not to establish a parol agreement whereby a decedent, prior to his death, promised to pay a specified sum to a child of his deceased sister.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 903, 903½.]

3. SAME.

Where the diversion of the property of a decedent from lawful descendants is made to depend on the recollection of witnesses to conversations establishing a parol agreement binding decedent to pay a specified sum to

claimant, the transaction must be closely scrutinized, so that fraud. or imposition, or imperfect recollection, may not prevail.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 903, 903½.]

4. SAME.

Where the origin of a demand depends wholly on the uncertain recollection of statements which witnesses heard the person creating the alleged liability make, the conduct of the parties with reference to the claim is of importance.

5. LIMITATION OF ACTIONS—DEFENSE—BURDEN OF PROOF.

Plaintiff sought to recover on a promise made by decedent in his lifetime, whereby he agreed to pay plaintiff a specified sum as soon as he got out of his embarrassment. Plaintiff at the time of the promise was an infant, and she did not bring an action until many years after she reached the age of 21. The defense of limitations was interposed. *Held* that, though the burden was on defendant to show affirmatively that decedent could have paid the debt without difficulty, the evidence given in support of the contention that the promise was not barred must be closely scrutinized.

Appeal from Trial Term, Jefferson County.

Action by Minnie White against Clara Brown Devendorf, administratrix of H. Nelson Brown, deceased. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Joseph Nellis, for appellant.
E. C. Emerson, for respondent.

SPRING, J. The plaintiff was born in 1874, and when about two years old her mother died, and she was taken into the family of H. Nelson Brown, a brother of her mother. In January, 1878, Amanda, the wife of H. Nelson, died, and it is the claim of the plaintiff that shortly before her death she entered into an agreement ·with her husband whereby he promised to pay $500 to the plaintiff. Brown, shortly before his wife's death, purchased a farm for $5,500. His wife paid in on the purchase price $1,500, which was a loan to the husband, and the wife wished the $500 to be paid by him to apply on this debt; so the agreement, if any was made, was supported by a good consideration.

The courts, before upholding an oral agreement of this kind, which, if carried out, will divert the property of the decedent from its natural channels, will require it to be established by clear, convincing proof. In fact, it must be a case of extraordinary equity, and sustained by unmistakable evidence, before it can measure up to the rigid rule of late adopted by the Court of Appeals. Holt v. Tuite, 188 N. Y. 17, 80 N. E. 364; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916; Hamlin v. Stevens, 177 N. Y. 39, 47, 69 N. E. 118, et seq.; Mahaney v. Carr, 175 N. Y. 454, 67 N. E. 903. I will briefly summarize the evidence, in order to ascertain if it complies with the strict test required by these cases.

The Browns were in moderate circumstances. They had been married about 17 years, and the $2,000 paid in by the husband on the

purchase price of the place had evidently been accumulated by dint of close thrift and economy. The wife's contribution to this purchase came to her by inheritance from her father. They had one child, a son, called Siddie, eight years of age, who died four years later. In that situation, with the plaintiff not related to the dying wife and a member of the family only two years, the agreement was claimed to have been consummated. Addie Haller, a sister of H. Nelson Brown, testified that she assisted in caring for his wife during her last illness. She testified, further, that she was present at a conversation between Brown and his wife a few days before her death, and, as her statement is as favorable to the plaintiff as that of any of the witnesses, I make the following extract from it:

"She [Mrs. Brown] said: 'Nelson, I am very sick. I would like to have you get some one, so I could make a will.' And she says: 'Nelson, I will tell you how I want to make my will. I want to leave Siddie $800, and Minnie [the plaintiff] $500, and you the rest.' Also she said she gave Siddie three quilts, Minnie two quilts, and 'you can have all the rest.' Also she gave Siddie three books, and Minnie two, and Nelson the cottage Bible. That is all she spoke of; and she said she wanted him to go and get somebody, and he went, I suppose, but he did not seem to get anybody, and at last Alfred Fox came along, and he went and talked with him, and he come in and he told her he would do as she said. He said he would divide it as she said. I do not remember, just now, if anything further was said. I told about the bed quilts and everything. He stated a reason why Alfred Fox said she better not make a will. He come in and told her that the children, when they come of age, might make him trouble; and she says: 'Nelson, I do not want to make you any trouble; but if you will divide my money as I said I won't make no will.' He told her he would. He says: 'I will do just as you say.'"

Cyrus Hawn, who married a sister of Amanda Brown, Ida Harter, a daughter of Hawn, Sidney Brown, a brother of Nelson, and William Haller, husband of Addie, confirm in a general way this story, either by hearing it first-hand or because of admissions made by Brown.

The only witnesses on behalf of the plaintiff who testified to the conversation in its details were Mrs. Haller and Hawn. Sidney Brown overheard a conversation in which Mrs. Brown asked Brown during her last sickness if he would do as he had agreed "with my money with Siddie and Minnie," and he promised to do so. Mrs. Harter related another conversation between Nelson Brown and his wife, shortly after the plaintiff joined their family, in which the wife said to the husband "she wanted Minnie to have that money, the $500." And Sidney Brown and Haller testified to admissions made by Brown.

The only witness whose testimony tends to contradict this story is Mercy A. Getman, who is not related to any of the parties and who aided in caring for Mrs. Brown during all of her last sickness. She testified that the sick woman told her husband she wished him to get some one to draw her will; that he went for a Mr. Inman for that purpose, but could not get him, and so reported to his wife, who—

"put her arms around his neck and says: 'Oh, Nelson, I wanted to do this on your account; for it would be better for you.'"

At her request he went after a justice of the peace, and was again unsuccessful, and on his return told his wife not to worry over the

matter. The witness testified that nothing was said about leaving $500, or any other sum, to the plaintiff.

Tested by the ordinary rules, there was sufficient evidence to warrant the verdict of the jury. Cases of this kind demand a higher standard. The rules usually applicable will not suffice. The conversations which these witnesses testified to occurred nearly 30 years before the trial. The devolution of property, and its diversion from lawful descendants and next of kin, are, therefore, made to depend upon the recollection of these witnesses for the plaintiff, who are related to some of the parties interested. Transactions of this kind must be scrutinized closely, in order that fraud or imposition, or imperfect recollection, may not prevail and thwart the wishes of the decedent.

The subsequent conduct of the plaintiff and Mr. Brown does not tend to support the alleged agreement. She remained in his household until she was 13 years of age, when she went to live with an aunt. In the meantime Brown married the defendant. After the plaintiff left his family, they had no relations like that of father and daughter, She became of age in 1895, married, and Brown died in 1900, leaving his widow, the defendant, and a son by her. So far as the evidence shows, or the inferences indicate, the plaintiff made no claim against him during his lifetime. They lived in the same vicinity. Their relations were friendly. They visited back and forth. She was in very moderate circumstances, and, if she had a valid claim for $500 against him, some effort to collect it would be expected, or some manifestation of its existence would have developed. The defendant was appointed administratrix of the estate of her husband in July, 1900. It was judicially settled in February, 1905. During all that period no suggestion of any claim was made to the defendant. It was presented in September, 1905, more than seven months after the entry of the decree settling the account of the administratrix, and the action was commenced in March following.

In transactions of this character, where the origin of the demand extends back a generation and is dependent wholly upon the uncertain recollection of statements which the witnesses heard the party creating the alleged liability make, the conduct of the parties with reference to the claim is of especial importance. The circumstances adverted to denoting the utter failure of the plaintiff to assert her demand when Brown was alive and able to recognize or dispute its validity are in hostility to the verity of her claim. She knew of the appointment of the defendant as administratrix, and that the estate was in process of settlement, and yet she remained silent. She attempted to explain this inaction, but the explanation is lame and unsatisfactory.

A bit of evidence is ingeniously resorted to in order to save the claim from the statute of limitations. Two or three of the witnesses testified that Mrs. Brown, at the time the alleged agreement was made, said that she did not wish the children to make her husband trouble, or embarrass him when they became of age, and that Brown said that he would make these payments "as soon as I get out of my embarrassment." From this evidence it is contended that Mrs. Brown

did not expect the $500 to be paid immediately upon the plaintiff's attaining her majority; but payment was to be postponed until the debtor husband could pay without embarrassment, and there is nothing to show his ability to pay at any time. The statute of limitations being a defense, the burden was on the defendant to show affirmatively that Brown could have paid the debt without difficulty. The claim, otherwise, would have matured when the plaintiff became of age in 1895, and would have been barred by the statute long before the action was commenced. The same scrutiny required in the investigation of a claim of this kind extends to an effort to keep it alive when long deferred. It is strange that Mr. and Mrs. Brown, when this child was 4 years of age, anticipated and guarded against the running of the statute of limitations 18 years thereafter. Mrs. Haller, one of the witnesses whose story was intended to be sufficient in all respects, was the aunt with whom the plaintiff resided after leaving Brown. Hawn and his daughter, Ida Harter, were related to Mrs. Amanda Brown by marriage, and naturally were not especially interested in behalf of the later wife of Brown. These are the witnesses who furnished the evidence which, it is alleged, suspended the running of the statute. While adequate in an ordinary case, in view of the lapse of time which had intervened the death of Mrs. Amanda Brown and the giving of the testimony, and the strict requirements as to satisfactory and complete proof in every aspect in actions of this character, we must hold the plaintiff failed to show by convincing evidence that there was an agreement to extend the time of payment of this claim, if any there was, beyond the date of her arriving of age.

We appreciate that the main proposition in this case has been decided by a jury in favor of the plaintiff, and by the customary mode of procedure the verdict should be a finality, as there was evidence to sustain it. As already noted, the test of the sufficiency of the evidence to warrant a recovery is higher in this case than in the ordinary actions. In Holt v. Tuite, supra, the action was for the specific performance of an alleged oral agreement of like import to the one we are considering. The trial justice found the existence of the agreement. The equities were with the plaintiff, and the intention of the decedent, against whose administrator the judgment was rendered, to have her property pass to the plaintiff, was evident; and yet the Court of Appeals, adhering to the rule of the necessity of strict, unmistakable proof in order to establish a valid verbal agreement, reversed the judgment. In Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916, the plaintiff recovered a verdict, with evidence supporting it, which would have been sufficient ordinarily to uphold it. The court granted a new trial, taking occasion to comment pointedly upon the stringency of the proof required. Judge Vann used this language at page 121 of 180 N. Y., and page 918 of 72 N. E.:

"We have repeatedly held that such a contract must not only be certain and definite, and founded upon an adequate consideration, but also that it must be established by the clearest and most convincing evidence. We have been emphatic in condemning these agreements, because they 'have become so frequent in recent years as to cause alarm.' We have been rigid and exacting

as to the sufficiency of the evidence to establish them, and have condemned the proof thereof 'through parol evidence given by interested witnesses.' As 'such contracts are easily fabricated and hard to disprove, because the sole contracting party on the one side is always dead when the question arises, we have declared that they should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses.' Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118."

In nearly all the cases in which the Court of Appeals have in the past few years reviewed judgments in cases of this kind, they have granted new trials in spite of specific findings of fact or the verdicts of juries. The necessities of the situation in each instance justified the drastic rules laid down by that court. The present case is not distinguishable from the others, some of which have been cited, and we therefore think a new trial should be ordered.

Judgment and order reversed, and new trial granted on the law and facts, with costs to the appellant to abide event. All concur.