## DOUGLAS, Respondent, v. BEEBE, Appellant.

### (195 N. W. 165.)

(File No. 5169. Opinion filed September 25, 1923.)

1. **Executors and Administrators — Services Rendered — Right of Plaintiff, Who Lived with Decedent 25 Years, to Pay for Services, Not Shown by Evidence.**

    In an action for services for a decedent during a period of 25 years, evidence held insufficient to warrant a finding that plaintiff, who had lived with decedent since he was 15 years of age, was entitled to compensation for services.

2. **Executors and Administrators—Quantum Meruit—Decedents— Claim for Services For Long Period Must Be Proved by Clear and Convincing Proof.**

Claim for services to a decedent extending over a long period of years, no demand for payment having been made during decedent's lifetime, must be proved by clear and convincing proof; the burden being on the claimant.

Appeal from Circuit Court, Edmunds County; Hon. J. H. Bottum, Judge.

Action by W. E. Douglas against H. E. Beebe, as administrator of the estate of W. L. Bullis, deceased. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

*Campbell & Fletcher*, of Aberdeen, for Appellant.
*J. M. Berry*, of Ipswich, for Respondent.

(2) To point two of the opinion, Appellant cited: Holt v. Tuiet, 188 N. W. 17, 70 N. E. 364; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916; Hamlin v. Stevens, 177 N. Y. 29, 69 N. E. 118; Mahoney v. Carr, 175 N. Y. 454, 67 N. E. 903; White v. Davenport, 127 App. Div. 791, 111 N. Y. S. 815; 24 C. J. 279; Vandecar v. Noland's Estate (Mich.), 154 N. W. 137; 18 Cyc. 533; 24 C. J. 406; 24 C. J. 407, note 96.

Respondent cited: Pauly's Estate (Ia.), 156 N. W. 355; Harshberger v. Alger, Grat (Va.) 52; Strandsbury v. Strandsbury, 20 W. Va. 23; Saunders v. Saunders, 90 Maine 284, 38 Atl. 172; Schwab v. Pierro (Minn.), 46 N. W. 71; Resso v. Lehan (Ia.), 64 N. W. 689; Norman v. Miller (S. D.), 168 N. W. 391; Higgs v. Biglow (S. D.), 164 N. W. 89; In re Kessler's Estate (Wis.), 59 N. W. 129; Savage v. Minnesota Loan & Trust Co. (Minn.), 171 N. W. 779; 40 Cyc. 2846.

GATES, J. Plaintiff presented a claim to the defendant administrator in the sum of $11,908, for 303 months' services rendered to the deceased, Dr. Bullis, during his lifetime, between June 1, 1889, and March 1, 1919. The doctor died in January, 1920. The claim was allowed by the county court in the sum of $3,000. Being dissatisfied therewith, plaintiff brought this action against the administrator, which resulted in a verdict and judgment of $7,000 in plaintiff's favor. This appeal by the administrator is from the judgment and the order denying a new trial.

Appellant chiefly relies upon the insufficiency of the evidence to justify the verdict. Respondent, Wiley E. Douglas, when a

boy about 15 years of age, began to live with Dr. Bullis at Allerton, Iowa, doing chores, driving, and doing other work for him, including work on a 40-acre farm near Allerton a part of the time. This arrangement continued during the greater part of the time until March, 1915, when respondent went to Edmunds county, S. D., and took charge of a farm of 160 acres belonging to the doctor. During nearly 6 years of said period, viz., from 1903 to 1909, plaintiff was away from Allerton. Just before respondent went to Edmunds county, he cashed a check given him by the doctor, upon which the doctor had noted, "This settles dealings to date."

A careful consideration of the evidence shows that the services rendered by respondent may be divided into three periods, viz.: (1) From 1889 to 1903; (2) from 1909 to March, 1915; (3) from March, 1915, to March, 1919. There is no satisfactory evidence that respondent rendered service during the lapse between the first and second periods; indeed, the evidence shows that respondent was absent from Allerton during that time.

[1] As to the services for the first period, the trial court should have instructed the jury that there could be no recovery, because of appellant's plea of the statute of limitations. As to the second period, there is no satisfactory evidence of either the amount or value of the services rendered, and it appears that respondent frequently worked for other people. Except for the alleged declarations of the doctor, hereinafter referred to, there is no evidence that respondent had not been paid for his services. On the contrary, in addition to the indorsement on the check above referred to, the evidence shows that respondent received and cashed checks from the doctor amounting to $95 in 1910, $95.63 in 1911, $211.24 in 1912, $64.80 in 1913, $30 in 1914, and $61.58 up to March, 1915.

In March, 1915, the former family relation changed. Respondent went to Edmunds county and operated the doctor's farm until March, 1919, when the doctor sold the farm. Respondent was furnished with a traction engine and machinery. There is no evidence to indicate whether respondent was farming for a share of the crop, or was paying cash rent, or what the basis was, except the evidence of Luther Stroub. He testified that in the presence of respondent the doctor made a proposition to Stroub to go

to South Dakota and work the farm as a joint venture or partnership, which Stroub declined. He further testified that respondent afterwards told him he was working on about the same basis as they talked over at that time. Respondent as a witness testified in rebuttal, "I never told him [Stroub] that." While in Edmunds county, respondent was engaged in doing general work, plumbing and garage work and farm work, in addition to his work on the farm. He testified that during his four years there he earned at other work than farming the doctor's land about $2,000. The evidence is silent as to who received the proceeds of the crops, as to the amount of the crops, and as to the amount of work done by respondent. The only evidence on which the respondent's claim is based is the so-called declarations or admissions of the doctor. They are as follows:

R. S. Dunham testified:

"I asked him what he paid Wiley up there [in South Dakota] and he said he and Wiley had made no agreement on what he was to pay him, but he was aiming to fix Wiley up some way or other; he might run through with it, and wanted Wiley to have something for his old days. He told me he did not pay Mr. Douglas wages, but he would get it some way or other. He told me Wiley was a little careless, and he would rather fix it so that he could not run through with it."

And:

"He said he was boarding him, and not paying him wages, but would fix that all up later."

W. A. Douglas, an uncle of respondent, testified:

"He told me something about what he expected to do for Wiley. He told me Wiley had been with him a long time, and he is a good trusty boy, and he expected to do something for him, so he will get a home in his old days. 'I expect to make him a deed to a portion of that land up there.' He did not say definitely how much, but I took it to be a quarter of a section of the land in South Dakota. He said he was going to give that to Wiley for a home in his old days, so that Wiley could not sell it. He would have it fixed so he could not dispose of it, and it would be his home in his old days; never mentioned it more than to state that he had never paid Wiley wages, and that he had been with him a long time."

Eric Linden testified:

"He told me Mr. Douglas had worked for him 23 years and has never drawn a cent on his salary. * * * He would get it in a bunch when he did get it."

Walter Wittgrave testified that decedent said to him:

"Wiley has worked for me ever since he was 14 years old, and he has never drawn a cent; but I will see it is all right if he died—if I died, I should say."

W. S. Hagen testified:

"He said he had not always drawn up his wages, or words to that effect, but he would eventually fix him, so he would not have to work."

J. P. Whitlock testified:

"Mr. Bullis told me that Douglas had been with him since he was 14 years old, and had never drawn any money, except a few dollars for a pair of overalls or a new shirt, and that he regarded him as one of the family."

George Watts testified:

"I asked the doctor there, when we were working at Snors, if he or Douglas owned the rig. He said it was his, but what was his was Douglas', and then he told me that Douglas was with him ever since he was 14 years old, and he said, 'He is just the same as one of the family; I will fix him up so he would not have to work after awhile.'"

Walt Taylor testified:

"I asked him, 'Does Douglas work on a salary?' or something like that. He said, 'No, he has been with me quite awhile'; he said, 'I looked after him'; and he said, 'He is not working for any salary, but he is about the same as one of the family,' or something like that."

On the other hand, Mrs. John McGraw testified:

"The doctor came home from Dakota, and John asked him what Wiley was going to do. He said: 'I do not know. We are square, and I am through with him.'"

There is no evidence that there were any further dealings between the doctor and respondent after March 1, 1919. There is no evidence that respondent ever made any claim for wages until after the doctor's death. There is no evidence that respon-

dent knew of the intentions of the doctor, as disclosed by the above declarations, until after the doctor's death.

[2] In this case the burden was upon respondent to establish his claim by clear and convincing proof. The test of the sufficiency of the evidence to warrant a recovery is higher in this case than in ordinary actions:

"Thus the evidence relied upon to establish the contract is, first, the testimony of the mother, who tried to swear $100,000 into the pocket of her own child; and, second, the testimony of witnesses who swear to the admissions of a dead man. The former is dangerous; the latter is weak; and neither should be acted upon without great caution." Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916.

"The courts, before upholding an oral agreement of this kind, which, if carried out, will divert the property of the decedent from its natural channels, will require it to be established by clear convincing proof. In fact, it must be a case of extraordinary equity and sustained by unmistakable evidence." White v. Devendorf, 127 App. Div. 791, 111 N. Y. Supp. 815.

"That no demand for compensation was ever made during his lifetime affords a presumption that none was contemplated by either party, and is in itself at least strongly persuasive of laches. This is of that class of claims in which it is held the duty of the court to require clear and substantial proof before leaving it to a jury to speculate as to the existence of the contract necessary to support them." Vandecar v. Nowland's Estate, 188 Mich. 429, 154 N. W. 137.

"But, where a claim for services or board is first made after the decease of the alleged debtor, the presumption obtains that payment was made, or that it was not intended to demand payment, and evidence to establish a claim for services against a decedent's estate, not made during his lifetime, must be other than mere loose declarations, and must clearly and distinctly establish a contract between claimant and decedent." 24 C. J. 279.

"Stale claims are regarded with especial disfavor, and require very strong and conclusive testimony to establish them, particularly where the claim was never asserted in decedent's lifetime." 24 C. J. 406.

"Claims for personal services, which might have been pre-

sented to the debtor during his lifetime, are the subjects of suspicion, when presented after his death, and must be proved by clear and explicit testimony." Reimensberger's Estate, 29 Pa. Super. Ct. 596.

"To establish a claim for services, proof of an express contract is not in all cases essential; but claimant must show, either an express contract or an implied agreement, or mutual understanding, that the services were to be paid for, by clear and satisfactory proof; and where there is no express contract the facts showing an implied contract or mutual understanding must be fairly established. * * * Particularly strong and convincing proof is required where the claim is stale, or where the services extended over a considerable period, and no demand for compensations was ever made during decedent's lifetime, or where there are any circumstances connected with the claim tending to render it improbable or suspicious." 24 C. J. 406.

Judged by the foregoing legal standards, the evidence was wholly insufficient to justify the verdict, and was wholly insufficient to justify the denial of a new trial.

The judgment and order appealed from are reversed.

Note—Reported in 195 N. W. 165. See, Headnote (1), American Key-Numbered Digest, Executors and Administrators, Key-No. 221(5), 24 C. J. Sec. 2184; (2) Executors and Administrators, Key-No. 221 (5), 24 C. J. Secs. 878, 1122, 1123.