KRAGER, Administrator, Respondent v. WAAGE, Appellant

(79 N.W.2d 286)

(File No. 9586. Opinion filed November 9, 1956)

Rehearing denied January 16, 1957

**Dana, Golden, Moore & Rasmussen**, Sioux Falls, for Plaintiff and Respondent.

**Everett A. Bogue**, Vermillion, for Defendant and Appellant.

**John Carl Mundt**, Sioux Falls, for Kenneth Krager, son of Robert Krager, deceased.

RUDOLPH, J.  Plaintiff, the administrator of the estate of Peter Krager, deceased, brought this action wherein it is sought to have a trust declared in certain property, the record title to which is in the name of the defendant, Mabel Waage.  The court held the trust was established and by its judgment ordered defendant to convey the property to the plaintiff.  Defendant has appealed.

The deceased, Peter Krager, was an oldtime resident of Turner County.  He lived with his wife on the farm, title to which is here in dispute, for many years.  He had a family of six living children including the defendant, all of whom were raised on this farm.  The farm was encumbered with the mortgage to the Federal Land Bank and during the difficult times of the 1930's, Mr. Krager was unable to meet the payments due under the terms of this mortgage.  The mortgage was not foreclosed but about the year 1941 Peter Krager executed a deed to the Land Bank.  However, Mr. Krager continued to reside on the farm.  All of the children with the possible exception of the youngest girl were grown and had left the farm but lived either within the same vicinity or near-by counties.  Peter Krager was anxious to retain this farm as his home even after deeding it to the Land Bank but discovered that he could not repurchase the farm either because of some rule of the Land Bank or because of his age and financial condition.  It was permissible and possible, however, for one of his children to buy this farm from the Land Bank if the bank's conditions could be met.  Mabel Waage is a daughter of Peter Krager.  After some negotiations Mabel Waage signed a contract of purchase with the Federal Land Bank whereby she agreed to purchase this farm for $6,000 under installment payments.  Mabel's husband, Tom Waage, signed the contract guaranteeing its performance.  The Land Bank also required that the farm

be rented to some one other than Peter Krager and a son Harvey Krager, this plaintiff, signed a rental agreement for a period of one year. These transactions all transpired in January and February of 1942. It appears that Peter Krager had sold his automobile and $500 of this money was used for the original payment under the contract which the Waages had signed. There was another $200 payment due under this contract in the fall which the Waages paid but which shortly thereafter Peter Krager repaid to the Waages. Peter Krager and his wife continued to live in this farm home as they had for many years past. Apparently farming conditions got better in Turner County following the execution of this contract and Peter Krager paid from the proceeds of the farm all of the payments due the Land Bank under the Waage contract, he paid the taxes and insurance and all other expense in connection with the farm. In addition to paying the payments required by the contract Peter Krager made two additional payments of $500 each. In 1948 payments made on the contract were in an amount sufficient so that the Federal Land Bank deeded the premises to Mabel Waage and in turn the Waages gave a mortgage on the land to the bank in the sum of $4,600 payable in installments. Peter Krager died in 1952 and up until that time he had made all of the payments of the installments due on the mortgage. Following the death of Peter Krager the Waages took over the operation of the farm and established a separate account in the bank for the proceeds therefrom which was carried during the lifetime of Peter Krager's widow. After the death of the widow and after this action was commenced the special account was no longer continued by the Waages and the monies therein were transferred to their personal account.

The trial court found the facts to be as follows: We quote Finding II which appears to us to be the pivotal fact as found by the trial court, and the finding upon which the trial court's decision must find its support. This finding is, "That on or about the 5th day of March, 1942, Peter Krager entered into an agreement with the Federal Land Bank of Omaha, Nebraska, to purchase (the land here in dispute), and that under said contract, legal title to the

above described premises was to be taken in the name of Mabel Waage, a daughter of Peter Krager, with the understanding that Peter Krager was the owner of said premises."

The court then found that the $500 original payment on the contract was made by Peter Krager, that the land was deeded to Mabel Waage in 1948, but that this deed did not alter the intention of the parties concerning the ownership of the land. Other findings are to the effect that Peter Krager occupied the land until his death, made all the payments due under the contract and mortgage, and that Mabel Waage never asserted ownership prior to the death of her parents.

We revert to Finding II for the purpose of determining whether it finds support in the record.

There is no attempt here to change the relationship between the Federal Land Bank and Mabel Waage as expressed by the written contract, the only purpose in this action is to determine as between Mabel Waage and the administrator of the Peter Krager estate whether the beneficial interest in this land vested in Peter Krager. If it did, it would be by virtue of a trust by operation of law which is specifically excepted from the provisions of SDC 59.0303, relating to a writing being essential to the creation of a trust in real property.

The evidence discloses that when negotiations were in process between Peter Krager and the Land Bank for the transfer of the land to the Land Bank, Mr. Hermandson, a representative of the Land Bank stated to Mr. Krager "If you will deed it back to us, instead of letting us foreclose, we will arrange so one of the kids in the family can buy it back in their name for you." Just what transpired between the time the land was turned back to the Land Bank and the first meeting where the purchase of this land was discussed does not appear. This first meeting occurred in January, 1942, when Mr. Krager, Harvey Krager and Mr. Steensland, a representative of the Land Bank appeared at the defendant's home near Coleman, South Dakota. Prior to this meeting the defendant and her husband knew only that Peter Krager had surrendered the land. Harvey Krager had no distinct recollection of what transpired at this

meeting. It does appear, however, that a contract for the sale of this land was entered into between Mabel Waage and the Land Bank, and a guarantee of performance by the purchaser was signed by Tom Waage, Mabel's husband. The Waages and Mr. Steensland both testified that at this meeting nothing was said about the land being purchased in Mabel's name for the benefit of her father. Mabel testified, "I know they came in * * * and said dad wanted to buy the farm, wanted us to buy the farm for him, and he said that, at first, that they wanted me just to put my name on it, but then the land man said that wasn't what ·he wanted—it had to be that we would buy the farm, instead of dad." Mabel further testified that her father gave her $500 with which to make the first payment on the contract, she thought this payment was cash. She further testified that she told her father he could live on the place and that he should make all of the payments under the contract and pay the taxes and insurance.

The contract prepared at this first meeting was not accepted by the Land Bank. It is significant to note, we believe, that the next meeting was not at the behest of the Waages but was called by Peter Krager. The Land Bank representatives did not contact the Waages when they learned the contract was not approved, but contacted Peter Krager. Present at this second meeting at the Peter Krager home were Peter Krager and his wife, Tom and Mabel Waage and Harvey Krager and his wife, and later two representatives of the Land Bank, Mr. Hermandson and Mr. Steensland. Mrs. Harvey Krager testified that at this meeting before the arrival of the Land Bank men Mr. Peter Krager stated "Well, he said that the Federal Land Bank men were coming and wanted to work out a way between us and the Federal Land Bank men to get the place back for the folks. He said that to get Harvey and I and Waages down to arrange some way of trying to get it back for them." She further testified with reference to a statement made by a representative of the Land Bank.

> "He explained to all of us, being that Grandpa had lost his farm, that we were all together there to arrange a way to get the farm back for them,

and that they could not buy it in their own name, because they lost it, but he said it could be bought through the name of one of the children and that they would have to have one of the children's name on the contract, and another name on a lease for a year and a guaranty that it should be farmed for three years."

This testimony of Mrs. Krager was generally denied by the Waages and Mr. Steensland. Mr. Hermandson was not living at the time of the trial. It is significant, we believe, that the contract of purchase was between the Land Bank and Mabel Waage only. At least in the ordinary course of events if the Land Bank were selling a farm it would be to the husband and not the wife. Mabel Waage testified that her husband said he would buy the place, and the question arises why if he was buying the place the contract was between Mabel and the Land Bank.

██ The trial judge had the opportunity to hear and observe the witnesses, and it was for him to determine their credibility and the weight to be given their testimony. We do not believe that Finding II is against the clear preponderance of the evidence.

Finding II being supported by the evidence it follows that at the time Mabel Waage signed the contract to purchase the farm it was at least tacitly understood by her, her father and the Federal Land Bank representatives that she was taking the legal title in her name for the benefit of her father. As stated in the case of Sinclair v. Purdy, 235 N.Y. 245, 139 N.E. 255, 258, even though a promise in words was lacking, the whole transaction was " 'instinct with an obligation' " imperfectly expressed.

It is the established rule in this state that a trust by operation of law must be established by clear, satisfactory and convincing evidence. Scott v. Liechti, 70 S.D. 89, 15 N.W.2d 1; Jones v. Jones, 67 S.D. 200, 291 N.W. 579, and cases therein cited. Even conceding that the above evidence in support of Finding II is not sufficient to meet this requirement, there are other facts which are ample when considered in the light of Finding II to meet this test.

In the first place it appears that the Land Bank re-

presentatives were contacting Peter Krager instead of the Waages when questions arose regarding the sale. It also appears that Peter Krager from the time the contract was signed until his death operated the farm in all respects as though it were his. He lived on the farm, rented out parts of it, made all the payments to the Land Bank under the contract and under the mortgage. Most significantly he paid $1,000 in excess of that required by the contract, and paid the original $500 when the contract was signed. All parties to the transaction knew that Peter Krager could not buy this farm back in his own name, and that it had been his home throughout his entire life. These facts all corroborate the evidence upon which Finding II is based.

We deem it unnecessary to discuss the question of the admissibility of alleged statements made by the deceased Peter Krager out of the presence of the defendant. The evidence is sufficient, in our opinion, without considering these alleged statements, to support the holding of the trial court.

Giving effect to Finding II, the fact situation is not too much different than that presented in Scott v. Liechti, supra. We are of the view that the decision of the trial court is in accord with the decision in that case.

The judgment appealed from is affirmed.

All the Judges concur.