**Jerry ROSETH, d/b/a Philip Livestock Express, Plaintiff and Appellee,**

v.

**ST. PAUL PROPERTY AND LIABILITY INSURANCE COMPANY, Defendant and Appellant,**

and

**Black Hills Agency, Inc., Defendant.**

**No. 14608.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 5, 1985.

Decided Sept. 6, 1985.

Thomas C. Barnett, Jr. of Kemnitz & Barnett, Philip, for plaintiff and appellee.

Gene R. Bushnell of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal by St. Paul Property & Liability Insurance Company (St. Paul) from a judgment entered by the trial court in favor of Jerry Roseth, d/b/a Philip Livestock Express. We reverse.

On November 12, 1979, a livestock trailer owned by Roseth and leased to Richard Miller was involved in an accident on U.S. Highway 83 near Mission, South Dakota. Miller was transporting 109 calves for the 720 Cattle Company of Idaho, to a buyer in O'Neill, Nebraska, when the accident occurred. Eleven of the cattle were killed at the scene of the accident and two were missing. Miller immediately contacted Roseth by telephone and informed him of the accident.

Miller was transporting the calves from Idaho to Nebraska pursuant to an agree-

ment with Roseth. Under this agreement, Miller would haul livestock for Philip Livestock Express using Roseth's trailer, with Roseth receiving twenty percent of the trucking charge.

On either the day of the accident or the day after, Roseth reported the accident to the Black Hills Agency (Black Hills). Roseth had purchased a cargo insurance policy from St. Paul through Black Hills' agent David Brinkman in 1977. The policy insured against the risk of livestock mortality only, specifically excluding coverage of "any animal able to walk from the conveyance or able to walk after unloading therefrom."

On November 14, 1979, St. Paul adjuster, James Wattleworth, was notified of the mishap by the Black Hills Agency. Wattleworth called Roseth that same day. Roseth informed Wattleworth that the surviving calves, which had been moved to Philip by Roseth, were generally "stiff," "gaunt," and "in pretty tough shape." Roseth also told Wattleworth that he had an all-risk policy that would cover the injured calves. Wattleworth stated to Roseth that he did not have a copy of the policy before him, but assured Roseth that St. Paul would perform in accordance with the provisions of the policy.

Wattleworth and Roseth then discussed alternatives concerning disposition of the surviving calves. Wattleworth advised Roseth that he had a duty to minimize his loss. Both parties agreed that this could best be accomplished by selling the calves the next day at an auction sale scheduled at Roseth's sale barn. Accordingly, the injured calves were sold the next day for approximately $20.00 to $22.00 per hundred weight less than the amount brought by similar, but uninjured, calves. The difference between the net value of the calves prior to the accident and the net value obtained from the sale was $8,865.98.

St. Paul issued payment under the policy for only fourteen calves, which included the eleven dead at the scene, one that later died, and the two that were missing. St. Paul denied coverage for the injured calves

pursuant to the exclusion in the policy. Roseth brought an action against St. Paul and Black Hills Agency for recovery of the loss he sustained ($8,865.98) in selling the injured calves for less than their market value.

At trial to the court, Roseth contended that he was entitled to recovery under two theories. First, Roseth claimed that Black Hills agent, Brinkman, negligently misrepresented the extent of coverage under the cargo insurance policy.

Roseth testified that he requested full coverage at the time he first procured the cargo policy from Brinkman. Brinkman denied that Roseth had requested full coverage, testifying that Roseth wanted coverage similar to which he previously had through a different agency, but at a better price. Brinkman obtained the maximum coverage available on the market at that time, which limited coverage, as did Roseth's previous policy, to livestock mortality only.

Roseth's second claimed basis for recovery was that St. Paul should be estopped from denying coverage on the basis of the exclusion contained in the policy for the reason that Wattleworth had failed to correct his misconception that the policy covered the injured calves. Roseth contended that Wattleworth had reinforced his misconception by instructing him to sell the injured calves immediately, and that he sold the calves on the assumption that St. Paul would reimburse him for the diminished value of the injured calves. Roseth testified that had he been informed that the injured calves were not covered, he would have nurtured them back to a healthier condition and sold them later to obtain a better price.

At the conclusion of the evidence, the trial court dismissed Roseth's claim against Black Hills Agency. Roseth has not appealed from that decision.

With respect to Roseth's claim against St. Paul, the trial court held that St. Paul should be estopped from defending on the

basis of the exclusion contained in the policy.

The trial court found that Roseth had told Wattleworth that he believed he had an all-risk policy and that the decrease in value of the livestock would be covered under his policy; that Wattleworth thought at the time that St. Paul did not have an all-risk cargo policy; that Wattleworth nevertheless allowed Roseth to go on thinking that the coverage existed because Wattleworth did not want to antagonize Roseth; and that Wattleworth told Roseth that he thought it was a good idea to sell the cattle the next day to minimize the loss. The trial court held that it would be inequitable to allow St. Paul to claim the exclusion under the policy.

St. Paul contends on appeal that the trial court erred in applying the doctrine of estoppel to provide coverage for a risk not covered by the policy where there was no clear and convincing evidence of any misrepresentation or concealment of material fact by Wattleworth. We need not decide this question. Rather, we hold that the doctrine of equitable estoppel is not applicable under the facts of this case.

In *Farmers Mutual Automobile Ins. Co. v. Bechard*, 80 S.D. 237, 246, 122 N.W.2d 86, 91 (1963), this court held:

[A]n insurance company which in its policy has written the generally broad coverage may be estopped to defend by reason of an exclusionary clause not within the terms the insured ordered and coverage which he was led to believe was contained therein.

This holding was followed in *State Automobile Casualty Underwriters v. Ruotsalainen*, 81 S.D. 472, 136 N.W.2d 884 (1965). The *Bechard-Ruotsalainen* rule is contrary to the majority rule, which provides that estoppel is not available to bring within the coverage of a policy those risks not covered by its terms or expressly excluded by the policy. *See Batesville Ins. & Finance Co. v. Butler*, 248 Ark. 776, 453 S.W.2d 709 (1970); *Nat'l Fire Ins. Co. v. Eastern Shore Laboratories, Inc.*, 301 A.2d 526 (Del.1973); *Shannon v. Great American Ins. Co.*, 276 N.W.2d 77 (Minn. 1979); *International Chiropractors Ins. Co. v. Gonstead*, 71 Wis.2d 524, 238 N.W.2d 725 (1976). *See also* 1 A.L.R.3d 1139 (1965).

In adopting the minority rule, the New Jersey Supreme Court held that

[w]here an insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom, to an insured *before or at the inception of the contract,* and the insured reasonably relies thereupon to his ultimate detriment, the insurer is estopped to deny coverage after a loss on a risk from a peril actually not covered by the terms of the policy.

*Harr v. Allstate Insurance Co.*, 54 N.J. 287, 306–307, 255 A.2d 208, 219 (1969) (emphasis added). *See also Darner Motor Sales v. Universal Underwriters*, 140 Ariz. 383, 682 P.2d 388, 400 n. 10 (1984) (adopting rule of *Harr*); *Peninsular Life Ins. Co. v. Wade*, 425 So.2d 1181, 1183 (Fla.App. 1983).

The requirement that the estopping conduct occur "before or at the inception of the policy" is consistent with the underlying rationale of the minority rule. The minority rule was born out of the inequities which result where an insured relies to his detriment on an insurer's superior knowledge in purchasing a policy of insurance and consequently is deprived of the opportunity to purchase the desired coverage elsewhere. *Harr, supra.*

In both *Bechard* and *Ruotsalainen*, the insureds sought specific coverage for which they gave consideration based on assurances that such coverage was provided for in the policy. Under the facts of the case before us, Wattleworth at most indirectly perpetuated a misconception held by Roseth concerning the nature of his coverage. We hold that under these facts the remedy of estoppel is not available to expand the terms of the policy.

The judgment is reversed.

FOSHEIM, C.J., MORGAN, J., and WUEST, Acting J., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent. This case was tried to the court, formal findings of fact and conclusions of law were entered, and a Memorandum Decision was incorporated into said formal judgment. There is no reversible error for the formal decision is not clearly erroneous and is supported by precedent in this Court.

Our scope of review must be established to arrive at a sound appellate decision. We must zero in on the type of lawsuit which confronts us. When these two basic thoughts are coordinated, we will be a long way down the road in finding that elusive lady we call justice.

This case involves the doctrine of estoppel as being available to bring within the coverage of an insurance policy, a risk not covered by its terms or expressly excluded therefrom. South Dakota slipped into the minority rule column with the advent of our decision in *Farmers Mutual Automobile Ins. Co. v. Bechard*, 80 S.D. 237, 122 N.W.2d 86, 1 A.L.R.3d 1124 (1963). In *Bechard*, 122 N.W.2d at 89–90, this Court recognized that estoppel affects and changes the rights of the parties under the literal terms of an agreement, whether it is an insurance policy or other written instrument. Former Chief Justice Biegelmeier, writing for the Court in *Bechard*, cited an Iowa case, *Briney v. Tri-State Mutual Grain Dealers Fire Ins. Co.*, 254 Iowa 673, 117 N.W.2d 889 (1962), with approval, where a "null and void" clause was held waived by an adjuster's knowledge. He expressed:

> That is the effect of all cases where waiver or estoppel are permitted; i.e., *liability where no liability existed by virtue of the printed contract.* If estoppel and waiver may prevail for the purposes indicated by these and other authorities that may be cited, *there is no reason they may not properly serve in other areas.*

*Bechard,* 122 N.W.2d at 90 (emphasis supplied mine). South Dakota follows the minority rule; so did the trial court in this case and should not be faulted for it. We recognized in *Bechard* that deceit or fraudulent intent on the insurer's part is not necessary to create estoppel against the insurer who defends by reason of an exclusionary clause. Citing a Delaware and Iowa case, we expressed: "The evidence to support the granting of relief, however, should be clear and convincing." *Bechard,* 122 N.W.2d at 91. We also held that insurance companies are required to act fairly when dealing with an insured. So let there be no doubt about this concept: The exclusionary clause herein (an insurance company contending it is only responsible for dead cattle under a cargo policy) will not hold up if the insured can establish estoppel.

Two years after deciding *Bechard,* this Court handed down *Cromwell v. Hosbrook,* 81 S.D. 324, 328–29, 134 N.W.2d 777, 780 (1965), which also set forth the required proof in estoppel:

> This is the general rule where relief is sought by reformation and is equally appropriate where the form of the action is one at law or by use of ancillary proceedings. In effect the relief sought, irrespective of the form of the action, *is to reform the insurance contract to provide coverage which did not exist under the contract as written.*

Enforcement of oral trusts in this state are predicated on "clear and convincing" evidence, *Kelly v. Gram,* 73 S.D. 11, 38 N.W.2d 460, or "clear, satisfactory and convincing" evidence. *Scott v. Liechti,* 70 S.D. 89, 15 N.W.2d 1; *Krager v. Waage,* 76 S.D. 395, 79 N.W.2d 286. Claims against estates for personal services rendered decedents have been categorized as necessitating proof by clear and convincing evidence, *Douglas v. Beebe,* 46 S.D. 559, 195 N.W. 165; *Mahan v. Mahan,* [80] S.D. [211], 121 N.W.2d 367, and jury awards allowing such claims have been nullified because the required degree of proof was lacking.

The qualify of proof to be clear and convincing is "somewhere between the rule in ordinary civil cases and the requirement of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt." *Brown v. Warner*, 78 S.D. 647, 107 N.W.2d 1. Its technical meaning has been expressed as "the witnesses must be found to be credible, that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Tapler v. Frey*, 184 Pa.Super. 239, 132 A.2d 890; Restatement of the Law, Contracts, § 511; 20 Am.Jur., Evidence, § 1253; 45 Am.Jur., Reformation of Instruments, § 116. The rule is a salutary one and operates to prevent the promiscuous substitution of parol for written contracts upon loose and unsupported claims that the coverage is other than as evidenced by the writing. Nevertheless, such proof need not necessarily, be voluminous or undisputed. (Emphasis supplied mine.)

We later stated in *State Automobile Cas. Underwriters v. Ruotsalainen*, 81 S.D. 472, 478, 136 N.W.2d 884, 888 (1965):

We have also said that it is for the trial court to determine in the first instance whether the proof in a given case is clear and convincing and that we may not disturb its conclusion in this regard unless we feel that the clear preponderance of the evidence is against its determination.

*Ruotsalainen* involved estoppel and an insurance company. In sum then, we have under consideration whether an insurance carrier may be estopped to deny coverage based on exclusionary language contained in a cargo policy; and to determine if the elements of estoppel were established by clear and convincing proof. This Court is bound by statute to not set aside findings of fact unless they are clearly erroneous. SDCL 15–6–52(a). The ultimate question

then becomes: Was the trial court clearly erroneous in its determination that there was clear and convincing proof of estoppel? *Brown v. Warner*, 78 S.D. 647, 107 N.W.2d 1 (1961); *Bechard*, 122 N.W.2d 86; and *Cromwell*, 134 N.W.2d 777. I would hold that it was not, and affirm the judgment of $8,946.10.

The majority opinion has narrowly and strictly applied the minority rule which we adopted in this state, or seriously eroded it; it has, in my opinion, forsaken the spirit or reason behind our previous following of the minority rule; it admits of no equitable considerations or implications; and it has determined that the trial court is clearly erroneous on the quality of proof without so expressing.

Equitable estoppel, upon which the trial court based its decision, has been defined by this Court as follows:

To create an estoppel, there must have been some act or conduct upon the part of the party to be estopped, which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to part with something of value or do some other act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights.

*Western Cas. & Sur. v. American Nat'l Fire Ins. Co.*, 318 N.W.2d 126, 128 (S.D. 1982) (quoting *Somers v. Somers*, 27 S.D. 500, 504, 131 N.W. 1091, 1093 (1911)). *Western Casualty* was cited with approval in *Matter of Estate of Williams*, 348 N.W.2d 471, 476 (S.D.1984). In *Williams*, going to the spirit, driving toward the reasonable, seeking to achieve a conscionable result, we further expressed:

An "estoppel" arises, where, by conduct or acts, a party has been induced to alter his position or do that which he would not otherwise have done to his prejudice. *Willadsen v. Crawford*, 75 S.D. 161, 60 N.W.2d 692 (1953). *"The doctrine ... is bottomed on principles of morality and*

*fair dealing and is intended to subserve the ends of justice. It seeks to accomplish that which is fair between man and man."* Iverson v. Iverson, 87 S.D. 628, 631–32, 213 N.W.2d 708, 710 (1973); *City of Rapid City v. Hoogterp,* 85 S.D. 176, 179 N.W.2d 15 (1970).

*Williams,* 348 N.W.2d at 475 (emphasis supplied mine). We also stated in *Williams, id.* at 476–77:

Of course, mere innocent silence or inaction will not work an estoppel. However,

*[t]he authorities make it abundantly clear that an estoppel may arise under certain circumstances from silence or inaction as well as from words or actions.... The principle underlying such estoppels is embodied in the maxim "one who is silent when he ought to speak will not be heard to speak when he ought to be silent."* (Citing 28 Am. Jur.2d *Estoppel and Waiver* § 53, at 665–66 (1966) and cases cited thereunder.)

Although the trial court used the term "equitable estoppel" and based its decision thereon, and justly so under the authorities I have cited above, the trial court might well have bottomed the decision on "detrimental reliance" or "promissory estoppel." A student of the law can study the cases in South Dakota on these various "doctrines," until his eyes are bloodshot and bulging. But more and more, we are seeing these equitable doctrines come forward to achieve justice and fair dealing between men. And that is all good. The literal constructionists live by the letter of the contract—they recognize nothing which is not expressed. Estoppel did not just arise, like the mists of creation; it was born out of conscience and embodied in the law to right wrongs. Here, the dealings between the parties, after the insurance contract was entered into, has been stonewalled, disregarded, and ignored. This insurance company and Roseth had dealings concerning this contract long after the contract was entered into; the insurance adjuster involved his company, as its agent, up to its legal ears and to slight these dealings creates a mental blockage to the entire law on estoppel, past-present-and-future. The trial judge heard a great deal of testimony in this case, not on pre-insurance contract matters, but on post-contract matters. Under SDCL 15-6-52(a), his findings should be given due regard, for he had the opportunity to see the witnesses and to judge their credibility. The trial judge did not condone this adjuster misleading Roseth. It was more than a "misconception" which the adjuster "perpetrated." We cannot, by any stretch of the imagination, fault the trial judge on his fact-finding; therefore, the only avenue of reversal is that equitable estoppel did not apply under the facts.

Although the trial court grounded its decision in equitable estoppel, I should like to point out some recent cases in this Court to aid bloodshot eyes. Recently, two cases were handed down, *Valley Bank v. Dowdy,* 337 N.W.2d 164 (S.D.1983), and *Minor v. Sully Buttes Sch. Dist.,* 345 N.W.2d 48 (S.D.1984), which addressed the doctrine of detrimental reliance. Promissory estoppel and detrimental reliance are regarded as the same doctrine in both cases. In *Cromwell,* 134 N.W.2d at 780–81, equitable estoppel is synonymously termed estoppel in pais, as cited with approval in *Taylor v. Tripp,* 330 N.W.2d 542, 545 (S.D.1983). With our copious equitable backdrop, let us digest the facts to determine if our Brother erred.

In my opinion, the trial court could have easily used the phrase "detrimentally relied" or "promissory estoppel," particularly the latter, and been home free, on the conceptual front. This Court has repeatedly held that we would affirm a right decision even if stated for a wrong reason. *House of Seagram v. Assam Drug Co.,* 83 S.D. 320, 328, 159 N.W.2d 210, 214 (1968). Still, I maintain that even on equitable estoppel grounds, the trial judge did not err. The facts: St. Paul's adjuster knew that Roseth believed the policy covered the loss, in value, of the live cattle (cripples, bruised, dehabilitated, cut, etc.); twice, Roseth told the adjuster that he was sure that

the cattle had full coverage; under oath, the adjuster testified that when Roseth told him this, that he did not believe that his company had cargo coverage envisioned by Roseth.* Roseth indicated he would proceed to sell the cattle right away; the adjuster stated he thought it was a good idea, that Roseth had a duty to minimize the loss; the adjuster testified in open court that he let Roseth think he, Roseth, had full coverage for the loss of the damaged cattle because he did not want to "antagonize" Roseth; the adjuster's notes reflect that Roseth was to inform him of the lost value in the cattle; Roseth then proceeded to sell the cattle when they were in very bad condition, and in truth and fact, was encouraged to do so by the adjuster.

Therefore, the adjuster's statements, conduct, and concealment misled Roseth. The adjuster only had to tell Roseth, "Roseth, the damaged cattle are not covered." But he did not do that; he knew that Roseth believed he was covered, and went so far as to encourage an immediate sale. He went so far as to tell Roseth that it was a good idea. Roseth was not in the insurance business. Roseth reasonably relied upon the adjuster, which he had a right to do. As our Court stated in *Craig v. Nat'l Farmers Union Automobile & Cas. Co.,* 76 S.D. 349, 354–55, 78 N.W.2d 464, 467 (1956): "Our court has recognized the right of an insured to rely on the superior knowledge of the agent respecting insurance matters."

St. Paul should be estopped from defending based upon an exclusion. To look at the policy, and to consider facts prior to its existence, is to forsake the reality of the situation which exists here. The New Jersey case, with its language, employed by the majority to achieve a reversal of a damage award, is inapposite to the terrible inequity before us. For, if you mislead a man into economic ruination or damage, by representations, concealment of material matters, or detrimental reliance prior to an insurance contract, the doctrine of equitable estoppel comes into play; but if the misrepresentation or misleading and detrimental reliance is all post-contract, estoppel is not activated, a dichotomy or forked reasoning process is established; and the brain, that complicated organ, is swept with fluctuation and oscillation.

---

* Yet, he failed to tell Roseth this! "One who is silent when he ought to speak will not be heard when he ought to be silent." *Williams,* 348 N.W.2d at 476.