FELDMEYER, Respondent, v. ENGELHART, Appellant.

(222 N. W. 598.)

(File No. 6796. Opinion filed December 31, 1928.)

*C. C. Busch,* of Waubay, and *Babcock & Babcock,* of Sisseton, for Appellant.

*Lewis W. Bicknell,* of Webster, for Respondent.

MISER, C. In 1927, respondent owned the contents of a hotel at Pickerel Lake. Appellant was engaged in the hardware business and in writing insurance. About July 1st, appellant talked to respondent at the hotel about fire insurance on its contents. Respondent asked appellant to procure him $1,500 of such insurance, but, on examination of the rate book there had by appellant, it was discovered that no rate was given therein for insurance on property at Pickerel Lake. However, appellant stated to respondent that, estimating from the rate given therein on property at Enemy Swim Lake, a policy for $1,500 would cost about $34. Appellant left with the understanding that he would attempt to get such a policy. On July 12th, respondent went to appellant's place of business, and, appellant being out, respondent paid $30 to appellant's clerk to apply on the insurance policy, and received a receipt therefor so stating. A few days later appellant again saw re-

spondent. Respondent testified that appellant said: "I haven't got that rate yet. I have forgotten it, but will attend to this right away. You have paid $30 on the policy; and the balance I will put on your book account. I will do it this way. I will apply the $30 on your book account and charge the policy on your book account." To which respondent replied, "It is all right with me if I get the policy;" whereupon appellant said, "You will get the policy." According to appellant, instead of the conversation above described, appellant tendered back to respondent his check for $30, and said: "I haven't got any rate on the insurance yet, and I can't write it up." Respondent said, "When you get a rate, write it up." Appellant replied, "All right." He then made a receipt on his regular receipt form, and said, "I will call you up and let you know as soon as I get the rate;" then, at respondent's request, appellant credited the $30 on respondent's store account, which then amounted to over $60. Appellant testified that he wrote twice in July to the general inspection bureau for a rate, but received neither a rate nor a reply; that he did not write or telephone to respondent as to the result of his efforts, nor did he discuss the matter further, until after a fire in October destroyed the hotel and its contents.

Immediately after the fire, according to the testimony of appellant as an adverse witness, appellant told respondent that he had been unable to get a rate, that no policy had been issued, and that he had had no opportunity to inform respondent. According to respondent, appellant said: "I am sorry, but I forgot about that policy. They never sent me the rate, and there wasn't a policy written."

Claiming the property destroyed to have been of the value of $2,300, respondent sued appellant for damages for breach of the contract to procure insurance, and asked judgment for $1,500. In his answer, appellant pleaded a general denial and no other defense. On trial, the jury returned a verdict for respondent on all the issues, and for damages in the sum of $1,037.90. From the judgment thereon and from the order denying appellant's motion for a new trial, this appeal is taken. The assignments of error are argued under three main heads: Those relating to rulings on evidence; those relating to the insufficiency of the evidence; and those relating to instructions. We find no errors in the rulings on evidence which are prejudicial or which merit discussion.

 Appellant also assigns as error the giving of the following instruction:

"The court instructs the jury, that where an owner of property requests an agent to procure insurance thereon, and the agent agrees to do so, and is free to do so, the effect of such contract is to obligate the agent to use reasonable diligence to procure the insurance and seasonably to notify the owner of the property in the event of the failure of such attempt to procure insurance;

"And in this case, if you believe that from the preponderance of the evidence, that the defendant did agree to procure insurance as claimed by plaintiff, and find he failed to do so from want of reasonable diligence, or having used reasonable diligence, and failed to procure insurance, he failed to notify the plaintiff of the fact that there was no insurance, then your verdict will be for the plaintiff."

Appellant contends that the foregoing instruction is erroneous, because it charges the jury that it might hold defendant liable, regardless of the fact that he had no rate and no rate was ever furnished him so that he could write the insurance; but there was evidence that appellant's failure to write the policy was due to his neglect and forgetfulness. This evidence was contradicted by appellant, but it presented a question of fact for the jury. Furthermore, the instruction complained of takes into consideration appellant's inability to get a rate, after a diligent effort to do so, by saying, in effect, that all appellant was required to do to avoid liability was to tell respondent that he had not succeeded in getting a rate and could not write the policy. The instruction as given fairly instructed the jury as to the law, and is in harmony with Lindsay v. Pettigrew, 5 S. D. 500, 59 N. W. 727, and Russell v. O'Connor, 120 Minn. 66, 139 N. W. 148. In the case last cited, the Minnesota court said: "What duty did the defendant owe to the plaintiff under the contract so made? * * * The relation created, * * * constituted the defendant an insurance broker, and as such he undertook to use reasonable diligence to get the property insured; that is, upon the facts of this case, he undertook to have the property rated and to take all other steps necessary to authorize him to write the policy, and in the event of his being unable to protect the plaintiff's property by insurance, then seasonably to notify the plaintiff of his inability so to do."

■ Appellant also assigns as error the refusal of the court to give an instruction requested by him. No useful purpose would be served in setting out this instruction in full. It stated the conversation and transaction of the middle of July, according to the testimony of appellant hereinbefore set out, excepting that it omitted therefrom the material facts that appellant retained the $30 paid on the premium and gave to respondent a regular receipt therefor; and, in response to respondent's statement, "When you get a rate, write it up," appellant replied, "All right." After so partially stating the facts, according to appellant's own version of the transaction, the requested instruction advised the jury that, if respondent never inquired further, he would not be justified in believing that such insurance had been written. Whether appellant would have been liable, under circumstances materially different from those testified to by him, and entirely different from those testified to by respondent, was a matter of no concern to the jury; and the refusal to give the requested instruction was not error.

■ ■ On the question of the sufficiency of the evidence, it should be remembered that the verdict resolves in respondent's favor any conflict in the evidence. Miller v. Johnson, 49 S. D. 506, 207 N. W. 478; Christensen v. Holm, 33 S. D. 174, 144 N. W. 919. As so viewed, the evidence is sufficient to support the verdict and to justify the trial court in denying appellant's motion for a directed verdict.

The judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.