Berdell FLEMING and Dennis Fleming, Assignors, and Anthony Benton, Assignee, Plaintiffs and Respondents,

v.

Harry K. TORREY, Defendant and Appellant.

No. 12032.

Supreme Court of South Dakota.

Dec. 29, 1978.

Curtis D. Ireland and Fred M. Winkler of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, Norman K. Blatchford, Hot Springs, for plaintiffs and respondents.

Chester A. Groseclose, Jr. of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellant.

PORTER, Justice.

Defendant, duly licensed to sell insurance in this state, became, on January 1, 1971, the agent for State Farm Insurance Company in Hot Springs. In August, 1971, plaintiff Fleming, a farmer-rancher in the area, purchased from defendant a State Farm liability insurance policy covering Fleming's 1954 Ford 2 ton truck. Five weeks later the truck was in an accident, leading to a judgment against Fleming in favor of one Benton. Benton, as Fleming's assignee, and Fleming sued defendant for $107,500, the balance remaining due on the Benton judgment after State Farm paid the $15,000

per person liability limit of the policy Fleming purchased in August.

Plaintiffs sued on the theory that defendant agent negligently failed "to suggest or advise" Fleming to purchase a policy with higher liability limits, since the agent knew the truck was to be driven by Fleming's 18 year old son and was to be used for commercial hauling, thereby increasing the owner's risk. Plaintiffs alleged that defendant held himself out to the public as an expert in insurance qualified to advise on all phases of liability insurance and that Fleming always insured his vehicles with State Farm and "relied on [defendant's] expertise for advice, . . . and counsel" regarding the amount and type of liability insurance to properly protect him. Plaintiffs also alleged that Fleming would have purchased additional liability insurance on the truck had he been advised to do so by defendant.

At the trial plaintiff Fleming testified in substance: (1) That he went to defendant's office for the purpose of buying liability insurance on the 1954 model truck; (2) that he did not ask for defendant's advice as to liability limits but instead indicated that he wanted the same amount as on his other vehicles; (3) that there was no other discussion concerning liability limits, but he knew of no reason why he wouldn't have followed defendant's advice, [if offered] as to the liability limits he should purchase.[1]

We accept plaintiff Fleming's testimony as the factual version most favorable to the verdict winner.

■ The insurance agent's duty was to procure insurance of the kind and with the provisions specified by the insured. *Feldmeyer v. Engelhart*, 54 S.D. 81, 222 N.W. 598 (1928); *Lindsay v. Pettigrew*, 5 S.D. 500, 59 N.W. 726 (1894); *Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854 (Iowa 1972). That is what the agent here expressly undertook to do. *E. S. Harper Co. v. General Ins. Co. of America*, 91 Idaho 767, 430 P.2d 658 (1967).

---

1. At the time, Fleming carried with State Farm liability insurance of $20,000 per person, $40,000 per accident on each of three owned vehicles he originally insured through the agency prior to the time Torrey became the agent.

■ There was no prior course of dealing from which the jury could infer a duty on the agent's part to go beyond this undertaking. Although Fleming was a fifteen year customer of the State Farm agency in Hot Springs, and of State Farm, neither State Farm nor any of the agents Fleming dealt with during that time are parties defendant. Although defendant Torrey had a file showing Fleming's insurance history with the agency and the insurer, the policy on the 1954 truck was the first policy Fleming purchased from defendant. There is no evidence that Torrey explicitly agreed to be responsible for unilaterally choosing appropriate liability limits nor is there evidence in Fleming's testimony that he expected Torrey to do so. We do not find any such arrangement followed, by custom and practice, or by agreement, during Fleming's pre-Torrey dealings with the agency or the company.[2]

■ For the purposes of our opinion we assume that plaintiff Fleming relied on defendant, had confidence in him and would likely follow his advice on insurance matters. But where the insured did not request the agent's advice as to liability limits but instead ordered specific limits; where the subject involved is a money limit rather than a more complex policy provision; and where there is no special relationship beyond that shown here, we cannot find a legal duty upon the agent to volunteer advice regarding liability limits for the breach of which the agent could become liable for $107,500.[3] Collegiate Mfg. Co., supra.

We have carefully considered the cases cited by plaintiffs. The South Dakota cases, Moore v. Kluthe & Lane Ins. Agency, Inc., S.D., 234 N.W.2d 260 (1975); Craig v. National Farmers Union Automobile & Cas. Co., 76 S.D. 349, 78 N.W.2d 464 (1956); and Peterson v. Great American Ins. Co., 74 S.D. 334, 52 N.W.2d 479 (1952), each involve a false or erroneous affirmative representation as to the meaning of a complicated policy provision, which representation was intended to be and was in fact relied on by insured. These cases are factually inapposite, and none of the other cases cited appear to support the contention that an actionable duty to volunteer advice on the adequacy of the policy limits arose here.

We note plaintiff's citation of 16 Appleman, Insurance Law & Practice, § 8845 at 548–50 (1968), which text cites [as does plaintiff] Hardt v. Brink, 192 F.Supp. 879 (D.Wash.1961). In Hardt the court stated that "no affirmative duty to advise is assumed by the mere creation of an agency relationship. . . . Whether or not an additional duty is assumed will depend upon the particular relationship between the parties." In Hardt, however, the court found a prior course of conduct by the agent toward the insured materially different than that which we find here.

The trial court in this case left it to the jury to determine from the evidence whether defendant agent had an affirmative duty to recommend "higher liability limits" and whether Fleming would have purchased a policy with "higher liability limits" if the agent had so recommended. We have determined as a matter of law that the agent had no such duty upon which a negligence action for damages could be founded. The case must therefore be tried anew.

■ Upon the retrial it will be for the jury to determine whether Fleming ordered a policy with per person liability limits of $20,000, as he claims, [rather than the $15,-000 per person policy he received] and whether defendant agent agreed to procure such a policy but negligently failed to do so under the holding of this court in Lindsay and Feldmeyer. See also Lowry v. Black

---

2. We see no basis in the record to charge Torrey, as an individual, for tort liability based on prior dealings between plaintiff Fleming and these non-parties, absent proof of a prior special undertaking with Fleming to which Torrey later assented upon becoming the agent at Hot Springs.

3. There is no one right answer to the question of what is a "safe" liability limit on a truck. Many factors enter in at the time of the accident that cannot be known in advance. The "safe" limit on property damage on property owned by an insured, for instance, is quite a different matter.

*Hills Agency, Inc.*, 509 F.2d 1311 (8th Cir. 1975); 3 Couch, Insurance, § 25:32, at 329 (2d ed. 1960).

Judgment reversed.

All the Justices concur.