**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Plaintiff and Appellant,

v.

**Marie ELLIOT; Brian Nelson, individually; and Kayla Nelson, a Minor, by Brian Nelson, her Guardian Ad Litem; Marie Elliot and Joey Smith, Defendants and Appellees.**

No. 18511.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1994.

Decided Oct. 19, 1994.

Douglas M. Deibert of Cadwell, Sanford & Deibert, Sioux Falls, for plaintiff and appellant.

A. Russell Janklow and James E. Moore of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellees Brian Nelson and Kayla Nelson.

Thomas J. Deadrick of Zimmer, Duncan & Deadrick, Parker, for appellee Marie Elliot.

JAMES W. ANDERSON, Circuit Judge.

American Family Mutual Ins. Co. (American Family) appeals from a decision of the Circuit Court for the First Judicial Circuit denying American Family's motion for summary judgment. We reverse the order of the circuit court.

### FACTS

This case is an action seeking a declaratory judgment to determine the rights under a homeowner's insurance policy (policy) issued to Marie and Robert Elliot. American Family sought to have the circuit court declare

that the policy excludes coverage for the babysitting service operated by Marie Elliot (Elliot) in her home.

Elliot cares for children in her home. On the average, she cares for ten children, five days a week and occasionally cares for children on Saturday and Sunday as well. She has operated this service for approximately twenty-five years and earns money for her services.* During the time periods relative to this action, Elliot filed papers with the Internal Revenue Service which are appropriate for a business. These documents list the name of the business as "Marie's Babysitting Service" with a principal business of "[b]abysitting children/daycare."

On April 4, 1991, Elliot was caring for Kayla Nelson (Kayla) and several other young children. When Kayla arrived at approximately 1:00 p.m. that day, three young boys for whom Elliot was caring were outside playing with sticks. Although Elliot told the boys to stop playing with the sticks, the children continued to do so. Kayla was injured when one of the boys poked her in the eye. As a result of the injury, Kayla lost sight in that eye.

Kayla's father, Brian Nelson (Nelson), brought an action on behalf of Kayla against Elliot and J.S., the little boy who poked Kayla with the stick. Nelson's complaint alleges that Elliot negligently failed to supervise the children, and thus Nelson is entitled to recover damages for Kayla's injuries. American Family then filed this action against Elliot and Nelson seeking a declaratory judgment.

American Family contends that the policy does not afford coverage to Elliot for Kayla's injuries because of an exclusion in the policy. The exclusion relied upon by American Family is listed on page 9 of the policy form and states:

1. **Coverage D—Personal Liability and Coverage E—Medical Expense** do not apply to bodily injury or property damage:

---

\* According to the record, between the years 1987 and 1991, Elliot received gross income ranging from $8,817 to $17,345.

b. arising out of **business** pursuits of any **insured** ... except:

(1) activities which are usual to non-**business** pursuits;

(emphasis in original).

The term "business" is defined in another section of the policy as follows:

**Business** means any profit motivated full or part-time employment, trade, profession or occupation and including the use of any part of any premises for such purposes. This includes child day services provided in **your** home for three days or more in any month to a person or persons, other than **insureds** and relatives, for which an **insured** receives some monetary or other compensation for such services. (emphasis in original).

The Elliots obtained the policy in 1984 from American Family's agent, Al Roeder. Although Roeder testified that he usually tries to keep his customers informed as to whether their policy covers their activities, Roeder did not discuss coverage for Elliot's babysitting endeavors. Roeder admitted that he failed to discuss this matter with the Elliots despite the fact that the policy was specifically amended in 1987 to clarify child care services under the definition of "business" and despite the fact that Roeder did not believe that Marie's child care services were covered by the policy. Marie Elliot never read the policy prior to April 4, 1991.

American Family and Elliot made cross-motions for summary judgment in this matter. The circuit court denied these motions. In an attachment to the order denying the summary judgment motions, the trial judge stated that he could not rule on the motions because he felt there were questions of fact as to Marie Elliot's state of mind regarding a reasonable expectation of coverage with regard to "profit motivated" child care. Judge Kern also believed there were factual issues with respect to the actions of Al Roeder and the 1987 amendments to the policy. All parties agreed to pursue a discretionary appeal in this Court, which was granted.

STANDARD OF REVIEW

When reviewing a motion for summary judgment, this Court must determine whether the moving party has demonstrated that there is no genuine issue of material fact and entitled to judgment as a matter of law. *Moe v. John Deere Co.*, 516 N.W.2d 332 (S.D.1994) (citations omitted). Because summary judgment is an extreme remedy, the evidence must be viewed most favorably to the non-moving party with reasonable doubt resolved in favor of the non-moving party. *Id.* (citations omitted).

*Issue I: Does the policy exclude coverage for Elliot's child care activities?*

American Family contends that the language of the policy which excludes coverage for business-related activities is clear and unambiguous. Elliot and Nelson contend that the language of the exclusion combined with that of its exception render this portion of the policy ambiguous and therefore the Court should liberally interpret the policy in favor of coverage.

An insurance policy is ambiguous when it "is fairly susceptible to two constructions." *Sunshine Ins. Co. v. Sprung*, 452 N.W.2d 782, 784 (S.D.1990) (quoting *McGriff v. U.S. Fire Ins. Co.*, 436 N.W.2d 859 (S.D. 1989)). Ambiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words. *Sprung*, 452 N.W.2d at 784. If the language of the policy is ambiguous, the policy should be construed liberally in favor of the insured and strictly against the insurer. *Pete Lien & Sons, Inc. v. First Am. Title Ins. Co.*, 478 N.W.2d 824, 827 (S.D.1991); *Tri–State Ins. Co. of Minn. v. Bollinger*, 476 N.W.2d 697, 701 (S.D.1991); *McGriff*, 436 N.W.2d at 862. If the policy is unambiguous, however, its terms are to be construed according to their plain and ordinary meaning. *Pete Lien & Sons*, 478 N.W.2d at 827. The terms of an unambiguous insurance policy cannot be enlarged or diminished by judicial construction. *O'Neill v. Blue Cross of W. Iowa & S.D.*, 366 N.W.2d 816, 818 (S.D.1985).

There is no question of material fact surrounding the pertinent language of the policy. The policy exclusion listed on p. 9

states that the policy affords no personal liability or medical expense coverage "arising out of **business** pursuits of any **insured** ... except activities which are usual to non-**business** pursuits ..." Page 1 of the policy indicates that words printed in bold type have defined meanings. The definition of "business" specifically includes "child day care services provided in your home for three days or more in any month to a person or persons, other than insureds and relatives, for which an insured receives some monetary or other compensation for such services." When this definition of "business", the exclusion of business pursuits, and the exception for "activities usual to non-business pursuits," are read as a whole, we do not believe that the policy is ambiguous under these facts. The plain and clear language of the policy states that there is no coverage for bodily injury arising out of child day care services provided by an insured unless the injury arose out of some non-business (in this case a non-child care) pursuit.

This reading of the policy is buttressed by reading page 13 which contains a detailed listing of additional protection available to insureds. Option 3 of this section is an endorsement for child care services which are provided in the home of an insured. This option would amend the "business pursuits" exclusion by adding another exception for "child care service regularly provided by an insured on the insured premises for which an insured receives monetary or other compensation." This optional coverage specifically negates the definitional part of the policy which includes child care services within the definition of "business." There is no dispute of fact that Elliot did not purchase this additional coverage. Nevertheless, the language which explains the additional coverage illustrates the fact that the policy the Elliots purchased *did not cover bodily injury arising out of Elliot's child care services.*

■ In this case, the alleged activity which caused Kayla's injuries was the negligent supervision of the young children who were chasing each other with sticks. We see no need to carry the analysis of Elliot's activities any farther. It is difficult to understand how the language of the exclusion and its exception is fairly susceptible to two constructions given these facts. Because there is no dispute as to the facts related to this issue, this Court holds as a matter of law that there is no ambiguity in the language of the policy. Therefore, after construing its terms according to their plain and ordinary meaning, we find that the American Family policy does not extend coverage to Elliot's alleged negligent supervision of the children.

*Issue II: Did the Elliots have a reasonable expectation of coverage for the child care activities?*

■ Elliot and Nelson argue alternatively that this Court should adopt the doctrine of reasonable expectations and apply it in this case. The doctrine of reasonable expectations directs "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Dairyland Ins. Co. v. Wyant,* 474 N.W.2d 514, 516 (S.D.1991) (quoting Keeton, *Insurance Law Rights At Variance With Policy Provisions,* 83 Harv. L.Rev. 961, 967 (1970)). Although this doctrine governs interpretation of insurance contracts in other states, it has not been declared law in South Dakota. *Wyant,* 474 N.W.2d at 516; *Trammel v. Prairie States Ins. Co.,* 473 N.W.2d 460, 463 (S.D.1991).

This Court expresses no opinion whether the doctrine of reasonable expectations would govern construction of an insurance contract if the terms of that contract were ambiguous, or may otherwise lead a policyholder to reasonably, but incorrectly, conclude that coverage existed. As in *Wyant,* that issue is not before us today because we have held that there is nothing ambiguous about this policy. The clear and plain meaning of the terms of the policy read as a whole exclude coverage for child care services under these facts. After reading the policy, it would be unreasonable to conclude that Elliot's alleged negligence would be covered by this policy.

*Issue III: Does coverage exist by virtue of the doctrine of equitable estoppel?*

■ Elliot and Nelson further contend that the doctrine of equitable estoppel ne-

gates the policy exclusion for child care services. Elliot and Nelson claim that Robert Elliot assumed that the babysitting service was covered by the American Family policy even though he did not read the policy carefully. Mr. Alvin Roeder, an American Family agent, testified that he did not discuss the child care endorsement with the Elliots and that he thought he mentioned to Robert Elliot that the policy did not cover the babysitting activities.

This Court has held:

[A]n insurance company which in its policy has written the generally broad coverage may be estopped to defend by reason of an exclusionary clause not within the terms the insured ordered and coverage which he was led to believe was contained therein.

*Farmers Mut. Auto. Ins. Co. v. Bechard,* 80 S.D. 237, 122 N.W.2d 86, 91 (1963). The evidence to support estoppel should be clear and convincing. *Id.* Furthermore, the conduct giving rise to estoppel must occur "before or at the inception of the policy." *Roseth v. St. Paul Property & Liab. Ins. Co.,* 374 N.W.2d 105, 107 (S.D.1985).

In this case, there was no conduct on behalf of American Family or the Elliots which could possibly give rise to a belief that the American Family policy covered Elliot's babysitting service. There is no evidence that the American Family agent, Alvin Roeder, made any representations to the Elliots that the babysitting service was covered under the policy. On the contrary, Roeder testified that he knew that the policy did not cover the babysitting service and had mentioned that fact to Robert Elliot.

Elliot's argument, in simplest terms, seems to be that because he purchased a homeowner's policy which he barely read, and because he was not specifically told otherwise, the babysitting service must have been covered by the policy. We cannot see in the facts before us that the conduct of either the Elliots or American Family, clearly and convincingly gave the Elliots reason to believe that the policy covered the babysitting service. Under these facts the remedy of estoppel is not available to expand the terms of the policy.

## CONCLUSION

The order of the circuit court denying American Family's motion for summary judgment is reversed. This matter is remanded to the circuit court to enter an order in accordance with this decision.

MILLER, C.J., and WUEST and SABERS, JJ., and HENDERSON, Retired Justice, concur.

JAMES W. ANDERSON, Circuit Judge, for AMUNDSON, J., disqualified.

KONENKAMP, J., not having been a member of the Court at the time this action was submitted, did not participate.