1996 SD 87

**Eugene RUMPZA and Melinda Rumpza, Plaintiffs and Appellants,**

v.

**Don LARSEN, doing business as Dakota Agency, and Stockholm Farm Mutual Insurance Company, Inc., a South Dakota Corporation, Defendants and Appellees.**

**Nos. 19419, 19420.**

Supreme Court of South Dakota.

Considered on Briefs May 21, 1996.

Decided July 17, 1996.

Jack Hieb, Schoenbeck Law Office, Webster, for plaintiffs and appellants.

James E. Moore of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee Larsen.

John V. OHNSTAD of Boos & Ohnstad, Milbank, for defendant and appellee Stockholm.

SABERS, Justice.

[¶ 1] This is a fire insurance case. Eugene and Melinda Rumpza (Rumpza) appeal the grant of summary judgment in favor of Larsen and Stockholm Insurance, claiming: (1) Larsen negligently failed to obtain the desired coverage, (2) Larsen negligently misrepresented the policy, (3) Larsen's negligence as agent should be imputed to Stock-holm, and (4) Stockholm should be equitably estopped from denying coverage. We affirm (2) and (4), but hold that genuine issues of material fact require reversal of (1) and remand of (3).

## FACTS

[¶ 2] Larsen owns and operates Dakota Agency and sells insurance in Rapid City, Waubay and Centerville. He is an agent for several insurance companies. In July 1992, Larsen purchased an existing insurance agency in Huron where Rumpza had been obtaining insurance. Since that time, Larsen has written all of Rumpza's six or seven policies which exceed $30,000 in annual premiums.

[¶ 3] Rumpza owns a construction business and lives near Waubay, South Dakota. Rumpza owned other real property near Waubay and agreed to trade it to John Mendenhall for real property near South Shore, South Dakota, in March 1993. Mendenhall planned to move from the South Shore property to the Waubay property, but no specific date was agreed upon. Rumpza contacted Larsen and told him of the property trade. Larsen stated Rumpza "indicated that there was a house on that location, and the people were still residing in there and would be moving out of that home, and they were going to be making some repairs to that property and put it up for rent and also possibly for sale." Rumpza and Mendenhall closed on March 23, 1993.

[¶ 4] On April 1, 1993, Melinda Rumpza contacted Larsen to bind coverage on the South Shore property. The parties determined that $50,000 was the appropriate coverage amount.[1] Larsen placed the coverage by adding it to an existing farm policy Rumpza had with Stockholm. The Stockholm policy contained an endorsement for vacant property, providing that Stockholm would "not pay for a loss while the insured premises is vacant beyond a period of 30 days." The endorsement also provided that "[i]f per-

---

1. Melinda testified that she discussed the coverage amount with her real estate agent, who told her the house could not be replaced for $50,000. She then requested $50,000 coverage from Lar-sen. Larsen testified that he and Melinda discussed the size of the home and determined that $50,000 was appropriate.

mission has been granted for vacancy, in lieu of increased premium, the amount of coverage will be reduced 40 percent."

[¶ 5] Larsen was told that after Mendenhalls moved, Rumpza would repair the property for rental or sale. Larsen indicated that he "anticipated that there would probably be sometime where somebody would not be living in there due to the fact that it's very hard to lay carpet down and put in new doors without some type of timeframe of a place being unoccupied." Larsen also testified that he had been in the rental business and that he knew there are periods of vacancy.[2] However, Larsen and Melinda never discussed the terms of the endorsement and Rumpza did not review their copy of their existing policy before the fire.

[¶ 6] Mendenhall moved from the South Shore property on May 9, 1993. After an unsuccessful attempt to rent the house, a renter was found and scheduled to move into the house by June 26, 1993. The house caught fire and burned on June 19, 1993, before the renter took possession. Although the property was vacant for more than thirty days, Stockholm determined that Larsen had given permission for the vacancy, and therefore paid Rumpza sixty percent of their loss, less a $500 deductible, for a total of $29,500.

[¶ 7] Rumpza sued Larsen and Stockholm, alleging Larsen was negligent in obtaining coverage. Rumpza requested the remaining $20,000 under the policy, damages and attorney fees.

[¶ 8] The trial court considered an affidavit from Dennis Disbrow, an insurance agent from Aberdeen, South Dakota. Disbrow's affidavit stated: "Don Larsen was provided with sufficient facts to know that there was going to be some period when the house would not be occupied. It was his obligation to see that the coverage protected his insureds for those periods.... There were sufficient facts provided to [Larsen] to advise him that the thirty (30) day vacancy limita-

tion on coverage was not sufficient to provide his insureds with the coverage that he told them he was getting for them under the circumstances."

[¶ 9] Larsen and Stockholm moved for summary judgment, which was granted. Rumpza appeals.

> "Summary judgment is authorized only when the movant is entitled to judgment as a matter of law because there are no genuine issues of material fact. SDCL 15–6–56(c); *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 564 (S.D.1986) ... [citations omitted]." *Bego v. Gordon*, 407 N.W.2d 801, 803 (S.D.1987). The moving party has the burden of proof and the "evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Groseth International, v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987), citing *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968) and *Trapp, supra.* Therefore, the pleadings, affidavits, depositions, and every reasonable inference arising therefrom must be viewed most favorably toward the nonmoving party. *Trapp, supra* at 562. Summary judgment is an extreme remedy and is appropriate to dispose of legal, not factual issues. *Trapp, supra; Bego, supra* at 804. Finally, we are not bound by the factual findings of the trial court and must conduct an independent review of the record. *Trapp, supra*, citing *Hurney v. Locke*, 308 N.W.2d 764, 767 (S.D.1981).

*Koeniguer v. Eckrich*, 422 N.W.2d 600, 601 (S.D.1988).

**[¶ 10] 1. Are there genuine issues of material fact whether Larsen was negligent?**

[¶ 11] Rumpza claims that because of Larsen's knowledge of the insurance and real estate business, he knew or should have

---

2. Larsen testified:
> Q: So is it your testimony that you did not expect that home to be vacant over 30 days?
> A: Did I not expect it to be? According to the information I have now, since the time of this loss to now, that's the answer I probably

should give. Prior to that, being involved in rental property, there are circumstances that I'll provide, this is the real world, pieces of property, of rental property, be unoccupied for longer periods. That's the real world.

known that there would be periods of time during which the South Shore property would be vacant and that those periods of time would be long enough to render the policy useless. They note that Larsen knew of other types of coverage which would have fully protected their interest in the property but he did not act on that knowledge.

[¶ 12] This court has addressed the duties and liability of insurance agents on several occasions. In *Fleming v. Torrey*, 273 N.W.2d 169 (S.D.1978), an insurance agent was sued, following the plaintiff's truck accident, for negligently failing "to suggest or advise" that the plaintiff purchase a policy with higher liability limits when the agent knew the truck would be driven by the plaintiff's son and used for commercial hauling. "The insurance agent's duty [is] to procure insurance of the kind and with the provisions specified by the insured." *Fleming*, 273 N.W.2d at 170 (citing *Feldmeyer v. Engelhart*, 54 S.D. 81, 222 N.W. 598 (1928); *Lindsay v. Pettigrew*, 5 S.D. 500, 59 N.W. 726 (1894); *Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854 (Iowa 1972)). The *Fleming* court "assume[d] that plaintiff Fleming relied on defendant, had confidence in him and would likely follow his advice on insurance matters." *Fleming*, 273 N.W.2d at 171. The trial court allowed the jury to determine from the evidence whether the agent had an affirmative duty, but the *Fleming* court determined as a matter of law that the agent had no duty to recommend higher liability limits and reversed. The *Fleming* court determined that "where the insured did not request the agent's advice as to liability limits but instead ordered specific limits; where the subject involved is a money limit rather than a more complex policy provision; and where there is no special relationship beyond that shown here, we cannot find a legal duty upon the agent to volunteer advice regarding liability limits for the breach of which the agent could become liable[.]" *Id.*

[¶ 13] Rumpza claims the present facts differ from *Fleming* because Larsen was involved in the decision regarding the amount of coverage on the property and because Larsen knew the property would be vacant for periods of time. We also note that the

subject here is not merely a money limit, but a policy provision excluding or limiting coverage in certain situations.

[¶ 14] In *Trammell v. Prairie States Insurance Company*, 473 N.W.2d 460 (S.D. 1991), the insurance agent added a daughter's name as an additional driver on her parents' policy, but did not make her a "named insured" under the policy. Therefore, the daughter was not offered a supplemental $10,000 accidental death policy which must be offered to a "named insured" under SDCL 58–23–7 and –8. When the daughter was killed in a one-car rollover, her parents sued, seeking the $10,000. The *Trammell* court stated: "Even though it is generally for the finder of fact to determine whether a duty has been negligently breached, the existence of the duty in the first place is a question of law." *Trammell*, 473 N.W.2d at 462 (citing *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 543 n1 (Minn 1989) (citing Prosser & Keeton, *The Law of Torts*, § 37 (5thEd 1984); Restatement (Second) of Torts § 328B (1965))). Although the *Trammell* court recognized the duty to obey the insured's instructions in good faith and with reasonable professional skill, it found no duty to exceed that standard and inquire further whether the insured was clear about what he wanted. *Id.*

[¶ 15] The *Trammell* court continued:

Had Trammell claimed that he asked agent to make certain that Jennifer would be covered by the accidental death policy, or to explain and recommend available coverages when adding her name to the car policy, whether agent breached his duty as defined by law would have been a material issue of fact for which summary judgment would not have been proper.

*Id.* Rumpza claims this case also differs from *Trammell* because the plaintiff in *Trammell* received the coverage he requested and the agent simply did not ask about additional coverage. Rumpza claims Larsen did not provide the coverage they requested because the policy was essentially worthless upon vacancy.

[¶ 16] Larsen stated that there were no discussions about specific repairs or remodeling when he bound the coverage. He testi-

fied, "I guess I ... didn't have any comprehension of how long it would take to make these repairs and [the extent of] those repairs. If somebody is going to paint a kitchen, yes, I can understand living there. If somebody is going to lay down new carpeting throughout the whole place, it's much easier to do that when the house is unoccupied."

[¶ 17] Larsen testified, "[i]t was my understanding that we had $50,000 worth of coverage on that home and the home was being prepared for a tenant or resale." Larsen knew it was possible the property would not be lived in for periods of time. From his personal experience in the rental business, Larsen also had knowledge that the property would be empty, sometimes for periods of time longer than the insured believed it would be unoccupied. Larsen's duty was to obtain insurance of the kind and with the provisions specified by Rumpza. Larsen told Rumpza he had $50,000 in coverage after they informed Larsen that they planned to do remodeling or repair work and rent or sell the house. While Rumpza did not specify their desire to have a policy without the exclusion for vacancy, Melinda testified she told Larsen the house could not be replaced for less than $50,000. The policy procured by Larsen did not provide $50,000 in coverage in the event of vacancy, which was foreseeable. Therefore, whether Larsen breached his duty as defined by law was a material issue of fact for which summary judgment was improper. *Id.*

[¶ 18] **2. Whether Larsen's statements constituted negligent misrepresentation.**

[¶ 19] Rumpza argues Larsen negligently misrepresented the policy. A party seeking relief for negligent misrepresentation must prove:

"knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will ... be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information and the other giving the information owes a duty to give it with care."

*Swanson v. Sioux Valley Empire Elec. Ass'n,* 535 N.W.2d 755, 757 (S.D.1995) (quoting *Aesoph v. Kusser,* 498 N.W.2d 654, 656 (S.D.1993) (citations and emphasis omitted)). "Despite such representations, the insured must 'inform himself as to the provisions of the contract, the failure of which ... would ordinarily constitute contributory negligence [and] bar recovery under SDCL 20–9–1.'" *Id.* (quoting *Moore v. Kluthe & Lane Ins. Agency, Inc.,* 89 S.D. 419, 428, 234 N.W.2d 260, 265 (1975)).

[¶ 20] "The representations relied upon must be false or erroneous." *Id.* (citing *Peterson v. Rogers,* 347 N.W.2d 580, 581 (S.D. 1984)). Larsen claims Rumpza cannot prove that Larsen made representations that were false or erroneous. Melinda testified that Larsen did not make any false statements. She believed that Larsen believed there was $50,000 coverage at the time he told her she was covered.

[¶ 21] Larsen claims Rumpza did not allege negligent misrepresentation in their complaint. The trial court determined that the "Rumpzas' complaint does not allege negligent misrepresentation, nor are there facts indicating Larsen made any misrepresentation to Rumpza. Accordingly, the Court need not discuss negligent misrepresentation." Rumpza did not allege by complaint or deposition testimony that Larsen made false statements. Larsen's statements must be false or erroneous before a cause of action for negligent misrepresentation is allowed. *See Swanson,* 535 N.W.2d at 757. The trial court properly granted summary judgment on this issue and we affirm.

[¶ 22] **3. Whether Larsen's negligence, if any, is imputed to Stockholm.**

[¶ 23] Rumpza claims Larsen's negligence should be imputed to Stockholm. Rumpza's complaint alleged "Don Lars[e]n of Dakota Agency acted at all times as agent for Stockholm[.]" SDCL 59–6–9 provides:

Unless required by or under authority of law to employ that particular agent, a prin-

cipal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as part of the transaction of such business; and for his willful omission to fulfill the obligation of the principal.

[¶ 24] Stockholm claims Larsen was an agent for Rumpza, not Stockholm. Larsen discussed his dual role during his deposition:

There's the beauty about being an insurance agent. You have to be two-faced, because if you don't have the accounts, you don't make a living. But if you don't have the company, you don't make a living. You have to look after the best interests of both parties.

The trial court held Larsen was entitled to summary judgment and did not discuss this issue. Because there is a genuine issue of material fact regarding Larsen's negligence and his agency to Stockholm, we remand this issue to the trial court for determination.

[¶ 25] **4. Whether Stockholm is equitably estopped from denying the remaining coverage.**

[¶ 26] Rumpza claims Stockholm should be equitably estopped from enforcing the vacancy provision.

"An insurance company which in its policy has written the generally broad coverage may be estopped to defend by reason of an exclusionary clause not within the terms the insured ordered and coverage which he was led to believe was contained therein." *Farmers Mut. Auto. Ins. Co. v. Bechard,* 80 S.D. 237, 122 N.W.2d 86, 91 (1963). The evidence to support estoppel should be clear and convincing. *Id.* Furthermore, the conduct giving rise to estoppel must occur "before or at the inception of the policy." *Roseth v. St. Paul Property & Liab. Ins. Co.,* 374 N.W.2d 105, 107 (S.D. 1985). *American Family Mut. Ins. Co. v. Elliot,* 523 N.W.2d 100, 104 (S.D.1994). The trial court determined that neither Larsen nor Stockholm made any misrepresentations.

[¶ 27] Rumpza claims he relied on the assertion of Larsen that they had $50,000 coverage on their property and that Larsen knew the property would be vacant. Therefore, Rumpza claims Stockholm should be equitably estopped from relying on the vacancy exclusion which he claims is inconsistent with Larsen's assertion.

[¶ 28] In *Roseth,* the insured contacted an adjuster after an accident with a trailer of cattle. The adjuster did not read the insured's policy but allowed the insured to continue to believe he had an "all-risk" policy covering injury to livestock. The policy "insured against the risk of livestock mortality only, specifically excluding coverage of 'any animal able to walk from the conveyance or able to walk after unloading therefrom.'" *Roseth,* 374 N.W.2d at 106. The *Roseth* court stated:

[W]here an insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom, to an insured before or at the inception of the contract, and the insured reasonably relies thereupon to his ultimate detriment, the insurer is estopped to deny coverage after a loss on a risk from a peril actually not covered by the terms of the policy.

*Id.* at 107 (citations and emphasis omitted). The *Roseth* court held the remedy of estoppel was unavailable and stated "[in prior cases], the insureds sought specific coverage for which they gave consideration based on assurances that such coverage was provided for in the policy. Under the facts of the case before us, [the adjuster] at most indirectly perpetuated a misconception held by Roseth concerning the nature of his coverage." *Id.*

[¶ 29] In *Elliot,* 523 N.W.2d 100, we discussed an injury at a home daycare and held equitable estoppel was inapplicable to a homeowners' policy which excluded business pursuits. We stated:

In this case, there was no conduct on behalf of American Family or the Elliots which could possibly give rise to a belief that the American Family policy covered Elliot's babysitting service. There is no evidence that the American Family agent, Alvin Roeder, made any representations to the Elliots that the babysitting service was covered under the policy. On the con-

trary, Roeder testified that he knew the policy did not cover the babysitting service and had mentioned that fact to Robert Elliot.

Elliot's argument, in simplest terms, seems to be that because he purchased a homeowner's policy which he barely read, and because he was not specifically told otherwise, the babysitting service must have been covered by the policy. We cannot see in the facts before us that the conduct of either the Elliots or American Family, clearly and convincingly gave the Elliots reason to believe that the policy covered the babysitting service. Under these facts the remedy of estoppel is not available to expand the terms of the policy.

*Elliot,* 523 N.W.2d at 104.

[¶ 30] Stockholm argues *Elliot* controls this issue because Rumpza purchased a policy which he did not read and assumed he was covered in the event of a vacancy because he was not specifically told otherwise. Rumpza argues that the vacancy exclusion should not be applied because it was not within the terms discussed when Rumpza ordered $50,-000 coverage.

[¶ 31] While Rumpza alleges that Larsen had information about potential vacancy and was negligent, Rumpza does not allege that Larsen or Stockholm made any representation that the home would be covered in the event of vacancy. Nor do they allege that they ordered an insurance contract with no vacancy exclusion. As in *Elliot,* these facts did not give Rumpza reason to believe that the policy covered the property in the event of vacancy. Under these facts, the remedy of estoppel is not available to expand the terms of the policy. *Id.*

## [¶ 32] 5. Whether the trial court should have excluded Disbrow's affidavit.

[¶ 33] Larsen filed a notice of review claiming the affidavit of Dennis Disbrow should not be admitted by the trial court. Larsen claims the affidavit contained legal conclusions not admissible in evidence and not helpful in deciding the motion for summary judgment.

[¶ 34] Larsen admits the trial court properly noted in its memorandum opinion that Dennis Disbrow's opinion, as expressed in his affidavit, cannot expand Larsen's legal duty as established. However, Larsen notes the trial court did not expressly decide the motion to strike. He filed a notice of review to ensure that Rumpza did not contend that Disbrow's affidavit created questions of fact precluding summary judgment. On appeal, Rumpza did not claim that Disbrow's affidavit created issues of fact, nor did we utilize Disbrow's affidavit in reaching our conclusion that genuine issues of material fact exist concerning Larsen's negligence in obtaining insurance for Rumpza.

[¶ 35] Generally, trial courts have broad discretion in ruling on the qualifications of experts and the admission of their testimony. *Zens v. Harrison,* 538 N.W.2d 794, 795 (S.D.1995) (citing *State v. Werner,* 482 N.W.2d 286, 291 (S.D.1992)) The rule governing admission of expert testimony is set forth in SDCL 19-15-2:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

We leave to the discretion of the trial court whether Disbrow's affidavit is admissible upon remand.

[¶ 36] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 37] AMUNDSON, J., deeming himself disqualified, did not participate.