ALLIED MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

DAKOTA ROSE, INC., Warren Lester
and Amy Lester, Defendants.

No. Civ. 98–4004.

United States District Court,
D. South Dakota,
Southern Division.

April 27, 1999.

Timothy M. Gebhart, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for plaintiff, Allied Mut. Ins. Co.

Cecelia A. Grunewaldt, Sioux Falls, SD, for defendant, Dakota Rose.

Michael W. Ellwanger, Rawlings, Nieland, Probasco Law Firm, Sioux City, IA, for defendant, Warren Lester, Amy Lester.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

[¶ 1] Plaintiff Allied Mutual Insurance Company seeks a declaratory judgment that a commercial general liability insurance policy it issued to defendant, The Dakota Rose, Inc. ("Dakota Rose"), expressly excludes liquor liability coverage. Dakota Rose raises affirmative defenses and brings a counterclaim for breach of contract. Allied moves for summary judgment, and Dakota Rose resists. For the reasons stated below, the Court grants in part and denies in part Allied's motion for summary judgment.

[¶ 2] Dakota Rose is a video lottery casino and bar located in North Sioux City, South Dakota, owned by John J. and Sharon R. Nilges. Dakota Rose's on-site liquor sales comprise more than seventy-five percent of the total annual receipts of the business. Former restaurant operations at Dakota Rose ceased in September 1993, when the business was owned by Leroy and Carmen Nilges, parents of John Nilges.

[¶ 3] In 1997 Warren and Amy Lester filed suit in Iowa District Court for Woodbury County alleging that early on the

morning of August 10, 1995, Warren Lester became intoxicated through consumption of alcoholic drinks served to him at Dakota Rose. The state court complaint further alleges that Warren Lester, in his intoxicated state, drove a vehicle to Sioux City, Iowa, where he collided with another vehicle and suffered serious and permanent injuries. Warren and Amy Lester seek compensatory damages for Warren's injuries from Dakota Rose pursuant to South Dakota law.[1]

[¶ 4] Allied filed this diversity action in federal court requesting a declaration that it does not have duties to defend or indemnify Dakota Rose in the Lester lawsuit. In its answer, Dakota Rose raised the affirmative defenses of waiver and estoppel and counterclaimed for damages against Allied for breach of contract. Dakota Rose alleges that Allied acted through its agent, Richard "Dick" Rasmussen, of Lennox Insurance, formerly known as Olson & Associates Insurors, Inc., of Lennox, South Dakota, and that Dakota Rose reasonably relied upon Rasmussen's representations that liquor liability coverage existed under the policy. In answer to the counterclaim, Allied alleges that Rasmussen acted as an independent broker for Dakota Rose, and not as an agent of Allied, and Allied denies that it made any representations of liquor liability coverage to Dakota Rose.

[¶ 5] At the time of Warren Lester's injury, there was in effect a commercial general liability insurance policy, number ACP GLO 7230081802, that Allied issued

to Dakota Rose for the period March 31, 1995, to March 31, 1996 ("the policy"). Allied contends that, although the policy provides certain coverage for products liability, Allied does not have duties to defend or indemnify Dakota Rose in the Lester lawsuit because the policy expressly excludes liquor liability coverage as follows:

**Section I—Coverages**

\*\*\*\*

**2. Exclusions.**

This insurance does not apply to:

\*\*\*\*

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1) Causing or contributing to the intoxication of any person;

2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

(Gebhart Aff., Ex. 1, Commercial General Liability Coverage Form, CG 00 01 (10–93) at pages 1 & 2 of 16.)

[¶ 6] Dakota Rose argues that Allied has duties to defend and to indemnify because an endorsement to the policy modifies the

---

1. The Lesters' Iowa state law petition, appended as Exhibit A to Allied's Complaint in this action, alleges at paragraph 11 that South Dakota law applies to the action and in paragraph 12 that "[a]t all times mentioned herein, it has been the common law of the state of South Dakota that an intoxicated person who becomes injured due to his intoxication may bring a cause of action against the establishment serving the intoxicating liquors." The Lesters' pleading appears to rely upon *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D.1982) (holding that cause of action exists for injured persons against liquor licensees pursuant to SDCL 35–4–78) and *Baatz v. Arrow Bar,* 426

N.W.2d 298 (S.D.1988) (holding that *Walz* decision applies both retrospectively and prospectively and that 1985 amendment to SDCL 35–4–78 attempting to abrogate *Walz* failed to accomplish its purpose). *But cf. Wegleitner v. Sattler,* 582 N.W.2d 688 (S.D.1998) (holding that SDCL 35–4–78 and 35–11–1, abrogating *Walz,* do not violate the separation of powers doctrine or the open courts provision); *Wildeboer v. South Dakota Junior Chamber of Commerce, Inc.,* 561 N.W.2d 666 (S.D.1997) (holding that SDCL 35–4–78 and 35–1–11, as amended after *Walz,* preclude recovery of injured persons against bar for selling alcohol to intoxicated person).

contract under both the Commercial General Liability Coverage Part and the Products/Completed Operations Liability Coverage Part, as follows:

**SCHEDULE**

**Description of Premises and Operations:**

**Restaurants—With Sales Of Alcoholic Beverages That Are More Than 75% Of The Total Annual Receipts Of The Restaurants—Without Dance Floor**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph a. of the definition of "Products—completed operations hazard" in the DEFINITIONS Section is replaced by the following:

a. "Products—completed operations hazard" includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

(Gebhart Aff., Ex. 1, Products/Completed Operations Hazard Redefined, CG 24 07 (11–85).) Dakota Rose contends that the endorsement modifies the Commercial General Liability Coverage Part and the Products/Completed Operations Liability Coverage Part to cover bodily injury and property damage arising from the sale of the products of Dakota Rose.

[¶ 7] The Court must grant the motion for summary judgment if there are no genuine issues of material fact for trial and Allied is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]rial courts should believe the evidence of the party opposing summary judgment and all justifiable inferences should be drawn in that party's favor." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992).

[¶ 8] The interpretation of an insurance policy is governed by state law, *TNT Speed & Sport Center, Inc. v. American States Ins. Co.*, 114 F.3d 731, 732 (8th Cir.1997), and under state law, the interpretation of an insurance contract is a question of law. *Zochert v. National Farmers Union Property*, 576 N.W.2d 531, 532 (S.D.1998). In South Dakota, the insurer's duty to defend and the insurer's duty to indemnify are severable and independent duties, and the duty to defend an insured is much broader than the duty to indemnify for a judgment rendered against the insured. *Hawkeye–Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 490 (S.D.1985). *See also U.S. Fidelity & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932 (8th Cir.1978). Allied bears the burden to show that the Lesters' claims for damages against Dakota Rose clearly fall outside of the policy coverage. *See North Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D.1992). The Court may consider the pleadings and "where appropriate, other evidence of record." *Id.* Any doubts whether the claims arguably fall within the policy coverage must be resolved in favor of the insured. *Id.* However, the scope of liability insurance is determined from the contractual intent and objectives of the parties as expressed in the policy, and the Court may not seek out a strained or unusual meaning for the benefit of the insured. *See Fort Pierre v. United Fire*

*and Cas. Co.,* 463 N.W.2d 845, 848 (S.D. 1990) (citing *Black Hills Kennel Club v. Fireman's Fund Indem. Co.,* 77 S.D. 503, 506–07, 94 N.W.2d 90, 92 (1959)).

[¶ 9] Dakota Rose does not argue that the endorsement renders the policy ambiguous in any way. Rather, Dakota Rose contends that the endorsement modifies the insurance contract to provide liquor liability coverage and eliminates the exclusion of coverage for alcoholic beverages sold or served on the premises. The Court cannot agree.

[¶ 10] As Allied argues, numerous courts faced with the identical question have held that the redefinition of "products hazard" in the endorsement does no more than extend coverage for completed operations and products liability hazards to situations in which products, such as food and beverages, injure patrons before they leave the premises, and the endorsement leaves undisturbed the policy's exclusion of coverage for an intoxicated patron who leaves the premises and causes injury to himself or others. *See e.g. State Auto. Ins. Ass'n v. Young Men's Republican Club of Allegheny County, Inc.,* 663 F.Supp. 1077, 1083 (W.D.Pa.1987); *Continental Western Ins. Co. v. The Dam Bar,* 478 N.W.2d 373, 375–76 (N.D.1991); *B.L.G. Enter., Inc. v. First Fin. Ins. Co.,* 328 S.C. 374, 491 S.E.2d 695, 697–98 (S.C.Ct.App.1997), *aff'd* 1999 WL 118515 (S.C. Mar.8, 1999); *Paradigm Ins. Co. v. Texas Richmond Corp.,* 942 S.W.2d 645, 652 (Tex.App.1997); *Exchange Ins. Co. v. Mar–Fran Enter., Inc.,* 169 Ariz. 187, 818 P.2d 172, 173 (Ariz.Ct.App.1991); *Smith Jean, Inc. v. Royal Globe Ins. Companies,* 139 A.D.2d 503, 526 N.Y.S.2d 604, 605 (N.Y.App.Div.1988). "[T]he only difference between the original definition of 'products hazard' and the endorsement is that under the original definition of the term, bodily injury or property damage had to occur away from the premises in order for there to be coverage, whereas the endorsement deleted the emphasized language." *B.L.G. Enter., Inc.,* 491 S.E.2d

at 697. Dakota Rose does not cite any cases holding to the contrary.

[¶ 11] The liquor liability exclusion is not ambiguous and precludes coverage for liability arising out of the business of selling and serving alcoholic beverages. *McGriff v. United States Fire Ins. Co.,* 436 N.W.2d 859, 862 (S.D.1989) (holding that Fraternal Order of Eagles, though nonprofit organization, was engaged in business of selling alcohol so that similar unambiguous liquor liability exclusion of comprehensive general liability policy did not provide coverage for negligent service of alcohol to patron who later left premises and caused two-car accident resulting in serious injuries to third party); *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.,* 792 F.2d 1036, 1041 (11th Cir.1986) (holding that similar liquor liability exclusion was not ambiguous). Therefore, the policy as written does not extend coverage to Dakota Rose for the claims raised in the Lester lawsuit.

[¶ 12] Citing *Rumpza v. Larsen,* 1996 SD 87, ¶ 26, 551 N.W.2d 810, 815 (S.D.1996), *appeal after remand, Rumpza v. Donalar Enter., Inc.,* 1998 SD 79, 581 N.W.2d 517 (S.D.1998), Dakota Rose contends that Allied should be equitably estopped from enforcing the liquor liability exclusion because John and Sharon Nilges, acting on behalf of Dakota Rose, relied upon representations by agent Dick Rasmussen that the policy included liquor liability coverage. *Rumpza* reiterates the principles announced in *Farmers Mut. Auto. Ins. Co. v. Bechard,* 80 S.D. 237, 122 N.W.2d 86, 91 (1963), and *Roseth v. St. Paul Property & Liab. Ins. Co.,* 374 N.W.2d 105, 107 (S.D.1985), that an insurance company may be estopped to assert the exclusionary clause if it is not within the terms the insured ordered and within the coverage the insured was led to believe existed. The conduct of the insurer giving rise to estoppel must occur before or at the inception of the policy and must be shown by clear and convincing evidence.

*Rumpza,* 1996 SD 87 at ¶ 26, 551 N.W.2d at 815.

[¶ 13] John Nilges attests that he has had an interest in Dakota Rose since 1991, that he and his wife purchased Dakota Rose on January 3, 1994, and that Dakota Rose dealt exclusively with agent Rasmussen in obtaining from Allied the commercial liability insurance. (Doc. 29, John Nilges Aff. at ¶¶ 1–2, 4.) He further attests that, after the full-service restaurant services were terminated at Dakota Rose in September 1993, he asked Rasmussen how much the annual premium for the policy would decrease, and Rasmussen told him there would be no refund or reduction in the premium because the continuation of the bar business at Dakota Rose was high risk as reflected by the on-sale liquor liability coverage. (*Id.* at ¶ 3.) Nilges also attests that, shortly after he and his wife purchased Dakota Rose in January 1994, he asked Rasmussen if the existing policy with Allied covered all of the insurance that was needed because " 'we want to be covered for any potential liability.' " (*Id.* at ¶ 5.) According to Nilges, Rasmussen assured him that the liability insurance with Allied covered all possible liability. (*Id.*) In reliance upon Rasmussen's representations, Dakota Rose renewed its policy with Allied on March 31, 1994 and in successive years thereafter.[2] (*Id.* at ¶ 6.) While Rasmussen's involvement dated back to the 1980's when Leroy and Carmen Nilges owned Miller Liquor, a predecessor business to Dakota Rose, Rasmussen's representations to John Nilges before March 31, 1995, the effective date of the Allied policy in question, taken as true, are relevant to the issue of whether Allied should be equitably estopped from denying liquor liability coverage. *See Rumpza,* 1996 SD 87 at ¶ 26, 551 N.W.2d at 815.

Nilges attests that he read the Allied policy, he believed the endorsement supported Rasmussen's statements that liquor liability coverage existed, and he relied upon Rasmussen's expertise and advice in purchasing the policy from Allied. (*Id.* at ¶ 13.)

[¶ 14] Sharon Nilges attests that she told Rasmussen in the summer of 1993 that Dakota Rose would terminate its restaurant operation in September 1993 but continue its on-site sale of alcoholic beverages, Rasmussen contacted Allied about the change in operations, and Rasmussen reported to her that the general liability classification of Dakota Rose as a "Restaurant/Lounge" would not change because the classification included both types of business. (Doc. 20, Sharon Nilges Aff. at ¶¶ 2–4.) She further attests that she worked with Rasmussen in procuring the renewal policies and Rasmussen assured her that the Allied contract provided all the liability insurance that Dakota Rose needed. (*Id.* at ¶ 5.) She also attests that she relied upon Rasmussen's expertise. (*Id.* at ¶ 6.)

[¶ 15] The Court concludes, under the facts as presented on this motion for summary judgment, that estoppel may be available to expand the terms of the policy. As explained in *Roseth,* in both *Bechard* and *State Auto. Cas. Underwriters v. Ruotsalainen,* 81 S.D. 472, 136 N.W.2d 884 (1965), the insureds sought specific coverage for which they gave consideration based upon assurances that such coverage was provided for in the policy. *Roseth,* 374 N.W.2d at 107. The South Dakota Supreme Court held the remedy of estoppel was not available in *Roseth,* where the insurer's agent "at most indirectly perpetuated a misconception held by Roseth con-

---

2. Although Nilges also attests that Rasmussen continued to assure him that Dakota Rose had liquor liability coverage after Warren Lester's injury occurred in August 1995 until Allied denied coverage in writing on March 17, 1997, (Nilges Aff. at paragraphs 7–10), such alleged representations were not made before or at the inception of the policy at issue and therefore would not constitute evidence relevant to whether Allied should be equitably estopped from denying coverage. *See Rumpza,* 551 N.W.2d at 815. Such evidence would be relevant to Dakota Rose's claim that Allied waived its right to assert lack of coverage after Warren Lester's injury.

cerning the nature of his coverage." *Roseth*, 374 N.W.2d at 107. In *Roseth*, the insurer's agent was an adjuster who arrived after the accident, while here, the evidence indicates that Rasmussen had an ongoing business relationship with Leroy and Carmen Nilges and later, John and Sharon Nilges. Both John and Sharon Nilges attest that, prior to the inception of the policy in effect at the time of Lester's injury, they told Rasmussen they wanted to be covered "for any potential liability." Giving Dakota Rose the benefit of all reasonable factual inferences, a genuine issue of fact for trial is created.

[¶ 16] Allied nonetheless argues that Rasmussen acted as an independent insurance broker on behalf of Dakota Rose pursuant to SDCL § 58–1–2(4), and not as an agent of Allied pursuant to SDCL § 58–1–2(1). *See Western States Land & Cattle Co. v. Lexington Ins. Co.*, 459 N.W.2d 429, 430 n. 1 (S.D.1990). *See also Stoddard v. Continental Ins. Co.*, 702 F.Supp. 275, 280 (D.Wyo.1988) (applying similar Wyoming law); *Moore v. Hartford Fire Ins. Co.*, 240 Neb. 195, 481 N.W.2d 196, 200 (Neb.1992) (applying similar Nebraska law); *Mayer v. Auto–Owners Ins. Co.*, 127 Mich.App. 23, 338 N.W.2d 407, 409 (Mich.App.1983). Allied emphasizes that Rasmussen testified during his deposition that Olson & Associates sold insurance for twelve to fifteen different insurance companies, that he worked for Dakota Rose as an independent insurance agent and he did not work for the insurance company, and he originally obtained the Allied commercial general liability policy at the request of Leroy and Carmen Nilges after submitting applications for insurance to several different companies on their behalf. (Doc. 33, Allied's Reply Brief, Ex. A, Rasmussen Dep. at 5–6, 9–10.)

[¶ 17] In adopting the minority rule in *Bechard* and following it in *Ruotsalainen*, the South Dakota Supreme Court held that the insurers in those cases were estopped because the agents acted in their capacities as the companies' agents, not the insureds' agents, and the court reached those holdings without examination of whether the agents were captive agents for the company or wrote policies for many companies. *See Bechard*, 122 N.W.2d at 93; *Ruotsalainen*, 136 N.W.2d at 887. At the time those cases were decided, it was unlikely that the agents were captive agents. More recently, in *Rumpza*, 551 N.W.2d at 815, the insurance agent testified that he played a dual role, and therefore, the South Dakota Supreme Court remanded because there was a genuine issue of material fact for trial regarding the scope of the agency. Whether an insurance intermediary is an agent of the insured or the insurer is generally one of fact. *See Rumpza*, 551 N.W.2d at 815; *Moore*, 481 N.W.2d at 199. Here, the Court concludes, giving Dakota Rose the benefit of all reasonable factual inferences, that Dakota Rose has created a genuine issue for trial as to whether Rasmussen acted as an agent of Allied or as a dual agent for Dakota Rose and for Allied.

[¶ 18] To summarize, the Court grants Allied's motion for summary judgment on the ground that the policy at issue did not expressly provide for liquor liability coverage. The Court otherwise denies Allied's motion for summary judgment because Dakota Rose has created genuine issues of material fact for trial on its affirmative defense of estoppel and because the parties did not address the affirmative defense of waiver raised by Dakota Rose. The counterclaim of Dakota Rose also remains for decision.

[¶ 19] Dakota Rose has demanded trial by jury. Federal procedural law governs the question whether Dakota Rose is entitled to a jury trial in this declaratory judgment action brought by Allied. *Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1098 (8th Cir.1997). "[I]f there would have been a right to a jury trial on the issue had it arisen in an action other than one for declaratory judgment, then there is a right to a jury trial in the declaratory judgment action; conversely, there is no right to a trial by jury

if, absent the declaratory judgment procedure, the issue would have arisen in an equitable proceeding." *Id.* at 1098–99. Had Dakota Rose brought a lawsuit against Rasmussen and Allied for negligent misrepresentation and/or breach of contract, Dakota Rose could have demanded a jury trial, and the scope of Rasmussen's agency would have been determined in that action. Therefore, this case will proceed to jury trial unless Dakota Rose waives its jury trial demand and the parties consent to trial before the Court. Accordingly,

IT IS ORDERED:

(1) that the Motion For Summary Judgment filed by Allied Mutual Insurance Company is granted in part and denied in part as stated in this Memorandum Opinion and Order. (Doc. 19.)

(2) that counsel for the parties will notify the Court within ten days after service of this decision whether the case will proceed to jury trial so that an Amended Rule 16 Scheduling Order may be entered.