# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-3226

———————

Douglas A. Grovenburg; Kathy A.    *
Grovenburg; Minor Unnamed       *
Children,                         *
                               *
         Appellees,            *
                               *
        v.                    *    Appeal from the United States
                               *    District Court for the
Homestead Insurance Company,    *    District of South Dakota.
                               *
        Appellant,           *
                               *
North Star Insurance Company,    *
North Star Mutual Insurance Company,   *
                               *
        Defendants.        *

———————

Submitted: May 13, 1999
Filed: July 27, 1999

———————

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Homestead Insurance Company appeals from the order of the District Court granting summary judgment to Kathy and Douglas Grovenburg and the Minor Unnamed Children. The District Court ruled that Homestead had a duty, under a

day-care policy, to defend Kathy Grovenburg in state-court actions brought, or to be brought, against her by the Minor Children. We reverse.

Homestead insured Kathy Grovenburg under a Family Child Care Provider's Group Liability Policy for the day-care facility she operated at her home in Brandon, South Dakota. In September 1996, two negligence actions were commenced against Grovenburg in South Dakota state court. The complaints alleged that Grovenburg was negligent in permitting her son, D.G., to supervise the day-care children in her absence and that D.G. had sexually abused the plaintiffs, the Minor Children, as a result of Grovenburg's negligent supervision while they were at the day-care facility. In January 1997, the Grovenburgs filed a voluntary bankruptcy petition. Grovenburg, her husband, and the Minor Children started an adversary proceeding against Homestead in the bankruptcy court, seeking a declaratory ruling that Homestead had a duty to defend Grovenburg in the pending state-court actions and in similar actions not yet filed on account of the automatic stay in bankruptcy. The parties executed a Stipulation regarding the material facts and filed cross motions for summary judgment regarding Homestead's duty to defend Grovenburg.[1]

The bankruptcy court issued proposed findings and conclusions pursuant to 28 U.S.C. § 157(c)(1), and recommended to the District Court that Homestead had a duty to defend Grovenburg. Reviewing de novo, the District Court agreed and entered an order holding that Homestead had a duty to defend Grovenburg in the state-court negligence actions. Homestead appeals.

---

[1]The appellees asserted a similar dispute with North Star Insurance Company, which had insured the Grovenburg family under a homeowners policy. The appellees did not object to the bankruptcy court's recommendation that North Star did not have a duty to defend Grovenburg and the District Court adopted that recommendation. North Star is not involved in this appeal.

The first issue we must address is whether the District Court's order was a "final order" sufficient to establish this Court's jurisdiction. "Courts of appeals have jurisdiction over appeals 'from all final decisions, judgments, orders, and decrees' in bankruptcy proceedings." Yukon Energy Corp. v. Brandon Invs., Inc. (In re Yukon Energy Corp.), 138 F.3d 1254, 1258 (8th Cir. 1998) (quoting 28 U.S.C. § 158(d)). In bankruptcy proceedings, we apply a more liberal standard of finality that takes into consideration "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and (3) a later reversal on that issue would require recommencement of the entire proceeding." Id. (quoting Kubicik v. Apex Oil Co. (In re Apex Oil Co.), 884 F.2d 343, 347 (8th Cir. 1989)). The District Court's order resolved a discrete segment of the proceeding and nothing remains for the bankruptcy court to do but execute the order. In addition, were review delayed, Homestead would be forced to incur expense for Grovenburg's defense even if it later is found not to have a duty to indemnify Grovenburg. Accordingly, we hold that the District Court's order was a final order within the meaning of 28 U.S.C. § 158(d).

This Court reviews the grant of summary judgment de novo. See Newyear v. Church Ins. Co., 155 F.3d 1041, 1043 (8th Cir. 1998). The interpretation and construction of insurance policies are questions of law, and therefore "the issue of whether the duty to defend or indemnify exists under a policy is particularly amenable to summary judgment." Id.

The parties agree that South Dakota state law governs our interpretation of this insurance policy. Under South Dakota law, the insurer's "duty to defend is much broader than the duty to pay a judgment rendered against the insured." Hawkeye-Security Ins. Co. v. Clifford, 366 N.W.2d 489, 490 (S.D. 1985). The insurer must defend its insured if, from the pleadings in the action against the insured, it is clear or arguably appears that "the alleged claim, if true, falls within policy coverage." Id. at 491. To avoid the duty to defend, the insurer must show that the policy clearly does

not cover the claim. If the policy is ambiguous, any doubt about coverage will be resolved in the insured's favor. See id. at 492.

The District Court found that basic coverage for the Minor Children's injuries existed under Part I.A. of the policy, which provides that Homestead agrees

> [t]o pay on behalf of the Insured all sums that the Insured shall be legally obligated to pay for bodily injury, property damage or personal injury resulting from an occurrence arising out of the Insured's activities as a Family Child Care Provider inclusive of any violation of any statute relating to child abuse or endangerment . . . .

Having carefully reviewed the policy, we agree with the District Court's conclusion regarding basic coverage and conclude that Homestead's arguments on this issue are without merit. We also conclude that an extended discussion of this issue would serve no useful purpose. See 8th Cir. R. 47B.

Having established that basic coverage exists, Homestead will have a duty to defend Grovenburg unless an exclusion negates that coverage. We move now to the policy's exclusions.

Homestead asserts that exclusion (m) precludes coverage for the injuries to the Minor Children. Exclusion (m) states that the policy does not provide coverage "[f]or any bodily injury, property damage or personal injury to a daycare child arising from an occurrence caused by a family member not employed as a care provider." Homestead argues the District Court erred in finding exclusion (m) to be ambiguous and in failing to construe exclusion (m) to preclude coverage for bodily injury to the day-care children arising from the alleged tortious conduct of D.G.

Neither party asserts that D.G. was an employee of the day-care facility. Instead, the dispute is over the meaning of "family member," a term that is not defined

-4-

in the policy. According to Homestead, the term "family member" as used in exclusion (m) refers to a family member of the insured, Kathy Grovenburg. The policy contains thirteen exclusions, nine of which expressly refer to the insured. Homestead argues that three other exclusions logically must be read as referring to the insured[2] and that, consequently, the final exclusion must be read as excluding coverage for injuries caused by a family member of the insured.

The appellees argue that if Homestead wanted the exclusion to mean a family member of the insured, it simply would have added those three words. The appellees interpret "family member" as referring to a member of a day-care child's family. To support their interpretation, they give two examples of situations where family members of a day-care child might cause injury or damage: (1) where two siblings are under the care of Grovenburg and one sibling hits the other sibling, resulting in an action against Grovenburg for negligent supervision, and (2) where a father picking up his child steps on his child's laptop computer that the child left in a doorway, resulting in an action against Grovenburg for negligently failing to remove the computer from the doorway.

Based on their reading of exclusion (m), the appellees argue that the meaning of "family member" is ambiguous and therefore must be construed against Homestead. An insurance contract is ambiguous when it is fairly susceptible of more than one interpretation. See American Family Mut. Ins. Co. v. Elliot, 523 N.W.2d 100, 102 (S.D. 1994). Although Homestead certainly could have made exclusion (m) more explicitly applicable to the insured's family, we believe that to adopt the appellees' interpretation would be to stretch the meaning of ambiguity too far. We read exclusion

[2]For example, exclusion (a) precludes coverage for injuries that result from the rendering or the failure to render professional services without stating that it relates to the insured's professional services. Because Homestead would not be liable for professional services of someone other than an insured, Homestead argues the exclusion would be meaningless if applied to the conduct of parties not insured by the policy.

(m) as clearly precluding coverage for injuries arising from an occurrence caused by a family member of the insured. In our view, it would be a strained reading to conclude otherwise. See Olson v. United States Fidelity & Guar. Co., 549 N.W.2d 199, 200 (S.D. 1996) (stating that an insurance policy must be reasonably interpreted). The natural meaning of the term, read in the context of the entire policy, argues for applying exclusion (m) in this case to preclude coverage. See Elliot, 523 N.W.2d at 102 ("Ambiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words."). We therefore hold that Homestead does not have a duty to defend Grovenburg in the state negligence actions or in similar actions yet to be filed.[3]

The judgment of the District Court as to Homestead is reversed and we remand the case to the District Court with instructions that summary judgment be entered in favor of Homestead.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent from that portion of the court's opinion holding that exclusion (m) is unambiguous and can only be read as precluding coverage for injuries arising from an occurrence caused by a family member of the insured. In my view, it is the court today that engages in a strained reading of the language and ignores the natural meaning of the term read in the context of the policy.

Exclusion (m) precludes coverage for injury to a "daycare child arising from an occurrence caused by a family member not employed as a daycare provider." The language in exclusion (m) contains two phrases,"daycare child" and "care provider," that are specifically defined in the policy, but one term, "family member" which is not

---

[3]Whether exclusion (m) is broad enough also to preclude coverage in cases such as those posited by the appellees is a question we need not and do not decide.

defined. The policy in question is specifically designated as a policy for child care providers. The complaints against Grovenburg alleged that the plaintiffs were six, three, and four years old. Unlike businesses dealing with adults or older children, it is a basic feature of a day care center's business that its infant "customers" must be delivered to the provider's premises by someone else, and most usually, that someone else is a member of the child's own family.

As the bankruptcy judge stated, "[A] family member of a day care child could cause an occurrence at the day care site just as could a member of the insured's family. Depending upon the facts of the particular case, an insured could be faced with a lawsuit involving either." The district judge stated that "there are . . . likely scenarios in which family members of a child supervised at the day care center could cause injury or damage to the child while on the day care premises," and the insurer could plausibly want to exclude coverage for such injury under the policy. The district judge did not err in so stating.

Under South Dakota law an insurer seeking to avoid coverage by relying on an exclusion in its policy has the burden of proving the exclusion applies, and the court must resolve any ambiguity in the policy in favor of the insured. Opperman v. Heritage Mut. Ins. Co., 566 N.W.2d 487, 489 (S.D. 1997); Olson v. United States Fidelity and Guaranty Co., 549 N.W.2d 199, 200 (S.D.1996). This rule applies so long as the provisions of an insurance policy are "fairly susceptible of different interpretations," Olson, 549 N.W.2d at 200, but not when the insured proposes an interpretation that "amounts to an absurdity," or "a strained or unusual meaning." Id.

The policy, on its face and in its intended context, is "fairly susceptible" of the reading the Grovenburgs urge, that "family member" refers to the children's families. It is altogether likely that an insurer would espouse this very reading if a day care child had been injured by, for instance, his mother stumbling as she carried the child in the door. Since "family member" was left undefined in a context in which it could

meaningfully apply either to the family of the day care child or the family of the day care provider, Homestead has not carried its burden of establishing an applicable exclusion. If the "family member" exclusion was important to Homestead, it should have defined the term. Since it did not, under South Dakota law the Grovenburgs are entitled to be provided a defense.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.